Robert G. BARON, Plaintiff,

v.

Andrew P. MELONI, Individually and as the Sheriff of the County of Monroe; and The County of Monroe, Defendants.

No. Civ–82–816C.

United States District Court,
W.D. New York.

Jan. 17, 1985.

Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N.Y. (Frank S. Kedzielawa, Buffalo, N.Y., of counsel), for plaintiff.

John D. Doyle, Monroe County Atty., Rochester, N.Y. (Nira T. Kermisch, Rochester, N.Y., of counsel), for defendants.

CURTIN, District Judge.

Plaintiff Robert G. Baron, a former member of the Monroe County Sheriff's Department, brings this action under 42 U.S.C. § 1983. He claims that his discharge from the Sheriff's Department violated his constitutional right to privacy, free association, and due process. Defendants, the County of Monroe and Andrew P. Meloni, County Sheriff, have moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

For the reasons that follow, the defendants' motion for summary judgment is granted, and the complaint is dismissed.

### Factual History

Plaintiff served as a deputy sheriff with the Monroe County Sheriff's Department from February 22, 1971, until his discharge on May 7, 1980. In early 1978, he met Linda Vaccaro, wife of reputed organized crime member Angelo Vaccaro. In March or April, 1978, his patrol car was observed in the driveway of the Vaccaro residence. While not legally separated, Linda and Angelo Vaccaro were living apart at this time. Both Mrs. Vaccaro and the residence were under surveillance by the Monroe County Organized Crime Task Force, which was attempting to locate her husband. Although Mrs. Vaccaro was known to have had past associations with organized crime figures, she was never convicted of any crime.

On April 24, 1978, plaintiff was summoned to the office of Chief of Detectives Anthony Yazback. He was then told of Mrs. Vaccaro's identity and of the Task Force's activities. Plaintiff was ordered not to associate with Mrs. Vaccaro.

Plaintiff was seen with Mrs. Vaccaro on three occasions during the months of June and July, 1978. On July 7, 1978, plaintiff was again ordered not to associate with Mrs. Vaccaro. On July 17, 1978, departmental charges were filed against plaintiff

by then-sheriff William Lombard. Although plaintiff was unsuccessful in his state court action, seeking to have the charges dismissed before the hearing, a hearing was never held. *Baron v. Lombard*, 71 A.D.2d 823, 419 N.Y.S.2d 388 (4th Dept.1979), *aff'd*, 50 N.Y.2d 896, 430 N.Y. S.2d 591, 408 N.E.2d 920 (1980).

On December 7, 1978, plaintiff wrote to then-Sheriff Lombard, seeking advice as to whether the orders not to associate with Mrs. Vaccaro were still in effect. Plaintiff received a response from Chief Deputy Thomas Cellura on December 15, 1978, which stated that the orders had not been rescinded.

New charges were filed against plaintiff on April 13, 1979, based on his association with Linda Vaccaro. He again attempted to stay the hearing in state court, and this time challenged the constitutionality of the order. On July 24, 1979, New York State Supreme Court Judge Elizabeth Pine ruled against plaintiff, finding that defendants were not acting in excess of their authority in attempting to hold a disciplinary hearing on the charges. She also found that defendants had a basis for issuing the orders. No further action was taken on these charges.

On March 21 and/or 22, 1980, Linda Vaccaro was injured in an automobile accident while driving plaintiff's privately owned car. After this incident, plaintiff was charged with insubordination, consorting with persons of ill repute, and conduct discrediting the department.

An administrative hearing was held April 21 and 22, 1980. The hearing officer, in a May 6, 1980 decision, found plaintiff guilty of insubordination but dismissed the two remaining charges for vagueness and overbreath. On May 7, 1980, defendant Sheriff Andrew Meloni discharged plaintiff for insubordination. The termination was affirmed in a November 19, 1980, arbitration proceeding, in which it was found that the decision to discharge plaintiff was not arbitrary or capricious.

There is no dispute that, during this entire period, plaintiff continued to perform well in his duties as a deputy sheriff.[1]

### Procedural History

Plaintiff's complaint was filed September 1, 1982, in United States District Court, Western District of New York, before Honorable Michael A. Telesca. Judge Telesca granted a motion by defendants for summary judgment on February 18, 1983. 556 F.Supp. 796.

On appeal, the United States Court of Appeals for the Second Circuit vacated that judgment and remanded the case for further findings. 742 F.2d 1439. Judge Telesca recused himself from the case, and the action was transferred to this court.

In the October 5, 1983, order remanding the action, the Second Circuit wrote the following:

On the present state of the record, we cannot be entirely certain whether it was appropriate to enter summary judgment for the defendants. The decision of the Hearing Officer states that the orders of April 24, 1978, and July 7, 1978, prohibiting plaintiff from associating with Mrs. Vaccaro had a reasonable basis "when issued." However, the Hearing Officer also stated that "it does not appear *from the record before me* that they continue to have such a basis." (Emphasis in original). It is not clear whether a reasonable basis for discharging plaintiff had ceased to exist only as of the date of the Hearing Officer's decision, May 6, 1980, or also as of the earlier time in March 1980 when plaintiff was in the company of Mrs. Vaccaro at his residence and at the Genesee Hospital.... *If the orders that plaintiff violated remained reasonable through the time of the March 1980 episode and did not become unreasonable until some time thereafter, then there would be no question that his discharge was lawful.* However, if those orders had ceased to be reasonable on March 21 and 22, 1980,

---

1. Plaintiff married Linda on July 13, 1980. They are now divorced.

then the issue arises whether plaintiff was validly found guilty of insubordination.

\* \* \* \* \* \*

Our remand is without prejudice to a renewed motion for summary judgment upon a clarified record. There may well be undisputed facts upon which a determination can be made whether the 1978 orders were reasonable in March 1980.

Item 17 (emphasis added).

### Discussion

■ Initially, it should be noted that defendants claim this action is barred by collateral estoppel and *res judicata* based on Judge Pine's July 1979 decision denying plaintiff's request for a writ of prohibition. It may be that her decision of July 24, 1979, would have some preclusive effect as to the constitutionality of the orders in 1978 and 1979. This court need not decide that, however, since Judge Pine could not decide at that time whether the orders continued to be constitutional in March of 1980. Her decision has no bearing on that determination.

Plaintiff claims that his discharge violated his rights to privacy and free association under the first and fourteenth amendments to the United States Constitution. Pursuant to the instructions of the Second Circuit, this court must determine whether the orders prohibiting plaintiff from associating with Linda Vaccaro were still reasonable, and therefore lawful, in March, 1980.

The only new addition to the record by defendants is the February 27, 1984, deposition of defendant Sheriff Andrew Meloni.[2] In his deposition, defendant Meloni noted that Angelo Vaccaro was incarcerated and recently convicted at the time the final set of charges was filed in March of 1980 (*see* Meloni deposition, Item 22, p. 11). When questioned as to his opinion of whether the department would have a continuing interest in Linda Vaccaro subsequent to Angelo Vaccaro's conviction, the Sheriff responded, "Quite possible." (Item 22, p. 12.) When asked to elaborate, the Sheriff explained:

There's no question in our mind that she was still associating with people who, again, allegedly were mobsters in this community. In that sense, I felt the association of Deputy Baron with Linda Vaccaro was truly bringing discredit to the department, and he was putting himself in the position of exploitation. He had access to information, he had access to the license plates and criminal histories and files in this organization and, I felt, was exposed by his association with the person who had been acknowledged to have kept the company of alleged mobsters in this community.

\* \* \* \* \* \*

[H]e had what every other deputy would have had: a great deal of access to a pool of information that could be sensitive . . . .

Item 22, pp. 13, 20.

It is important to note that, although the Organized Crime Task Force had been disbanded by 1980, there was still an ongoing investigation into organized crime, in which the Monroe County Sheriff's Department was actively involved (Item 22, p. 19).

Plaintiff does not dispute that the Monroe County Sheriff's Department was involved in investigations into organized crime activity in 1980. Nor does he dispute that, as a deputy sheriff, he had access to the criminal history files and the investigative files of the Sheriff's Department.

Nor does plaintiff dispute that, at the time of the accident in March, 1980, Linda Vaccaro was still the wife of Angelo Vaccaro. Although Angelo Vaccaro had just in-

---

**2.** Plaintiff stated that he had nothing further to add to the record.

The factual data relied upon by Plaintiff is contained in the documents already on file in the United States District Court Clerk's Office. There are no further exhibits or documents being submitted by Plaintiff at this time. Item 25, ¶ 3.

stituted divorce proceedings against Linda, the two were legally married until June, 1980. Plaintiff does not dispute that Linda Vaccaro was present at Angelo's January, 1980, trial (Hearing Transcript, p. 91), or that she visited him during his incarceration (Item 22, p. 14).

Finally, although defendant Meloni acknowledged that plaintiff had been properly carrying out his duties (Item 22, p. 10), the Sheriff believed that plaintiff's association with Mrs. Vaccaro limited the areas to which he could be assigned. Defendant Meloni flatly stated that he would not place plaintiff in the detective division or give him any investigative or organized crime assignments (Item 22, pp. 20–21).

■ Based on all of the above, the court cannot find that the orders were in any way unreasonable on March 21 and 22, 1980, or that Sheriff Meloni unreasonably enforced them. Plaintiff was a deputy sheriff with the Monroe County Sheriff's Department and, as such, had access to various investigative files. As Sheriff Meloni pointed out, the department was still actively involved in organized crime investigations. Plaintiff had been ordered not to associate with the wife of a then-convicted organized crime leader. Although divorce proceedings had begun at that point, Linda Vaccaro was still married to Angelo Vaccaro. She had appeared frequently at his trial two months before the 1980 incident. She was known to be associating with suspected organized crime members. Under the circumstances, it was reasonable for defendant Meloni to find that plaintiff was putting himself in a tenuous position, a position which might invite exploitation and discredit the department.

Since the orders were reasonable on March 20 and 21, 1980, as shown by undisputed facts provided by defendant Meloni, plaintiff's discharge was lawful. (*See* Order of the Second Circuit, Item 17.)

■ After the action was remanded to this court, plaintiff filed an amended com-plaint, in which he raised a new cause of action: a violation of his procedural due process rights under the fourteenth amendment (Item 27).

Although plaintiff states that he did not have an opportunity to be heard, there was a two-day hearing held on April 20 and 21, 1980. Plaintiff was represented by counsel. The crux of plaintiff's complaint seems to be that he was denied the right to be heard before the "ultimate decision-maker"—in this case, Sheriff Meloni.

Defendant Meloni admits that he did not read that transcript of the hearing before reaching his decision to terminate plaintiff. Yet, he was aware of the hearing officer's dismissal of two charges and of the finding that plaintiff was guilty of insubordination. He was also aware that the hearing officer recommended leniency (Item 22, p. 15). Yet, he terminated plaintiff, because he routinely terminated anyone who was found guilty of insubordination (Item 22, p. 16).

Plaintiff had a full and fair hearing. Defendant Meloni accepted the findings of the hearing officer as to plaintiff's guilt on each of the charges. He discharged plaintiff, which was within his discretion. This discharge was affirmed by arbitration. In no way was plaintiff denied due process.

Defendants' motion for summary judgment is granted. The complaint is dismissed, and judgment shall be entered for defendants.

So ordered.