**Ivan C. REEDER, Plaintiff,**

**v.**

**Anthony M. FRANK, Postmaster General of the United States Postal Service, Defendant.**

**No. 90–C–0506–S.**

United States District Court,
D. Utah, C.D.

March 19, 1992.

David J. Holdsworth, Romney & Condie, Salt Lake City, UT, for plaintiff.

Margaret R. Nelson, U.S. Atty. Office, Salt Lake City, UT, Christopher Pearson, U.S. Postal Service, San Bruno, CA, for defendant.

## MEMORANDUM DECISION

SAM, District Judge.

This matter is before the Court on defendant's motion for summary judgment. The Court, having considered the relevant facts, pleadings and law, now issues its memorandum decision.

### I. Facts

Plaintiff, Ivan C. Reeder ("Reeder"), brought this action against Anthony M. Frank, Postmaster General of the United States (the "Postmaster"). Reeder, a postal employee, alleges that he has been discriminated against as a result of a speech impediment. The Postmaster concedes that Reeder has a speech "impairment," although the parties dispute its severity.[1]

Reeder has been aware of his speech impairment for at least thirty years, but avers that his impairment cannot be readily classified in current medical terms.[2] How-

---

1. Reeder asserts that "[he] has a speech condition, disorder, dysfunction or impediment which is an impairment and which impairment substantially limits one or more of [his] major life activities, namely communicating." Plaintiff's Second Amended Complaint ¶ 6. The Postmaster disputes Reeder's characterization of his impairment as one that substantially limits one of his major life activities.

2. Reeder acknowledges that his speech impairment does not affect his ability to read, hear and understand. Rather, he characterizes his impairment as restricting his ability to respond. Reeder maintains that speaking requires him to expend an extra effort that is not expended by an individual not suffering from such an impairment. Reeder concedes that the impairment does not rise to the level of "aphasia," which he defines as language disorder, or "aphonia," which is a loss of voice, but could "probably most accurately [be] labelled or classified as vocal hyperfunction or dysphonia." Plaintiff's Responses to Defendant's Second Set of Admissions, Interrogatories and Requests for Production of Documents, Answer No. 1.

ever, Reeder concedes that he has not consulted a doctor about his speech impairment since at least 1984. Reeder did undergo surgery approximately twenty years ago to remove nodules on his vocal cords and he maintains that the surgery was related to his present speech impairment. However, Reeder has not provided medical records to support this claim.

Reeder began working for the Postal Service in 1973 as a Distribution Clerk, with a grade of PS–05. In 1974, Reeder transferred to the Maintenance Craft division, the area of his current employment. During Reeder's tenure with the Postal Service, he has received several promotions. The record indicates that Reeder has advanced, in the Maintenance Craft division, from the position of Custodial Laborer, with a grade of PS–03, to his current position of Maintenance Control Supervisor, with a grade of EAS–14.

On or about April 13, 1989, Reeder applied with the Postal Service for the position of Maintenance Programs Specialist, which has a grade of EAS–19. On or about August 3, 1989, the Postal Service awarded the position to another employee. Reeder alleges that the Postal Service rejected his application for the position because of his speech impediment.

Reeder made a second attempt to secure the position during the subsequent year. On or before June 8, 1990, he applied with the Postal Service for the same position. Reeder received notice on or about August 6, 1990 that the Postal Service had declined to act favorably on his application. Reeder alleges that the Postal Service once again rejected his application for the position because of his speech impediment.

Reeder filed suit on June 11, 1990, asserting five causes of action arising from the alleged discrimination that occurred during the Postal Service's denial of his first application for advancement. In his first and second causes of action, Reeder alleges that the Postal Service violated his rights under sections 501 and 504 of the Rehabilitation Act. *See* 29 U.S.C. §§ 791,

794 (1982) (amended and renumbered in 1978). Reeder's third cause of action alleges that the Postal Service violated his rights under sections 1001(b) and 1003(b) of the Postal Reorganization Act. *See* 39 U.S.C. §§ 1001(b), 1003(b) (1982). Reeder's fourth and fifth causes of action allege that the Postal Service breached its implied employment contract with him and also breached its implied covenant of good faith and fair dealing.

Reeder amended his complaint on June 3, 1991 to incorporate claims resulting from the Postal Service's alleged discriminatory treatment of his second application for advancement. In his amended complaint, Reeder realleged the causes of action asserted under the original claim and alleged identical causes of action for the second claim.

The Court has considered the relevant facts, pleadings and law with respect to the specific causes of action alleged by Reeder and will now address each cause of action individually in light of the summary judgment standard set forth below.

## II. Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is proper only when the pleadings, affidavits, depositions or admissions establish there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party.[3] *E.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden has two distinct components: an initial burden of production on the moving party, which burden when satisfied shifts to the nonmoving party, and an ultimate burden of persuasion, which always remains on the moving party. *See* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2727 (2d ed. 1983).

The movant bears the initial responsibility of informing the court of the basis for

---

**3.** Whether a fact is material is determined by looking to relevant substantive law. *Anderson* *v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

his motion and identifying those portions of the record and affidavits, if any, he believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553, 91 L.Ed.2d at 274. In a case where a party moves for summary judgment on an issue on which he would not bear the burden of persuasion at trial, his initial burden of production may be satisfied by showing the court there is an absence of evidence in the record to support the nonmovant's case.[4] *Id.*, 477 U.S. at 323, 106 S.Ct. at 2554, 91 L.Ed.2d at 275. "[T]here can be no issue as to any material fact ... [when] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

## III. Discussion

In his Memorandum in Support of Defendant's Motion for Summary Judgment ("Memorandum in Support"), the Postmaster asserts that the Rehabilitation Act of 1973 (the "Rehabilitation Act") provides the exclusive remedy for a federal employee alleging employment discrimination on the basis of a handicap. Reeder, in his Memorandum in Opposition to the Defendant's Motion for Summary Judgment ("Opposition Memorandum"), concurs with the Postmaster's assertion on this point; however, Reeder asserts that all of his causes of action do not rely on discrimination based on handicap.

**4.** In his dissent in *Celotex*, Justice Brennan discussed the mechanics for discharging the initial burden of production when the moving party seeks summary judgment on the ground the nonmoving party—who will bear the burden of persuasion at trial—has no evidence:

Plainly, a conclusory assertion that the nonmoving party has no evidence is insufficient. Such a 'burden' of production is no burden at all and would simply permit summary judgment procedure to be converted into a tool for harassment. Rather, as the Court confirms, a party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record. This may require the moving party to depose the nonmoving party's witnesses or to establish the inadequacy of documentary evidence. If there is literally no evidence in the record, the

The Court notes that Reeder's amended complaint does not specifically assert claims of employment discrimination under the causes of action brought for breach of employment and breach of implied covenant of good faith and fair dealing. Although the Court believes that the causes of action Reeder has asserted outside the scope of the Rehabilitation Act possibly could be resolved under the exclusivity theory, this Court does not dismiss such causes of action on that basis. Rather, the Court has examined all of Reeder's non-Rehabilitation Act claims and dismisses all such claims for the reasons set forth below. In addition, the Court discusses and dismisses Reeder's claims under the Rehabilitation Act.

### A. *Plaintiff's First and Sixth Causes of Action—Defendant's Alleged Violation of Section 504*[5] *of the Rehabilitation Act.*

Counts one and six of Reeder's complaint allege that the Postmaster violated section 504 of the Rehabilitation Act. Section 504 provides:

No otherwise qualified individual with handicaps in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or ac-

moving party may demonstrate this by reviewing for the court the admissions, interrogatories and other exchanges between the parties that are in the record. Either way, however, the moving party must affirmatively demonstrate that there is no evidence in the record to support a judgment for the nonmoving party.

477 U.S. at 323, 106 S.Ct. at 2557–58, 91 L.Ed.2d at 279 (citations omitted).

**5.** Because Reeder has referred to sections in the Rehabilitation Act that have been renumbered, and for the convenience of the parties, the Court has adopted the parties' outdated section numbers. However, the Court notes that Section 504 of the Rehabilitation Act was amended and renumbered in 1978. In the current version of the United States Code, section 504 is numbered section 794.

tivity ... conducted by ... the United States Postal Service. 29 U.S.C. § 794 (1982). Reeder asserts that his speech impediment does not preclude him from meeting the criteria of an "otherwise qualified individual," and that the Postal Service denied Reeder's employment advancement on the basis of his speech impediment.

The Court is precluded from considering the merits of Reeder's arguments because section 504 does not provide a private cause of action. In *Johnson v. United States Postal Service*, 861 F.2d 1475 (10th Cir. 1988), *cert. denied*, 493 U.S. 811, 110 S.Ct. 54, 107 L.Ed.2d 23 (1989), the United States Court of Appeals for the Tenth Circuit stated:

> Section 501—*not* section 504, under which the plaintiff has brought this action—provides for a private cause of action for federal employees.
>
> . . . . .
>
> We hold, furthermore, that *only* section 501 provides a private cause of action for federal employees bringing an action alleging employment discrimination based on handicap.

*Id.* at 1477–78 (footnote omitted). This Court is bound to follow the precedent of the Tenth Circuit Court of Appeals. Accordingly, Reeder's first and sixth causes of action, alleging violation of section 504 of the Rehabilitation Act, are dismissed.

B. *Plaintiff's Third and Eighth Causes of Action—Defendant's Alleged Violation of the Postal Reorganization Act.*

Reeder avers that the Postal Service's failure to promote him violates sections 1001(b) and 1003(b) of the Postal Reorganization Act. 39 U.S.C. §§ 1001(b), 1003(b) (1982). Reeder concedes, however, that "his argument is against the weight of authority...." Opposition Memorandum, at fn. 3.

Section 1001(b) of the Postal Reorganization Act provides, in relevant part: "The

Postal Service shall establish procedures, in accordance with this title, to assure its officers and employees meaningful opportunities for promotion and career development...." 39 U.S.C. § 1001(b) (1982). Section 1003(b) of the Postal Reorganization Act provides, in relevant part: "The Postal Service shall follow an employment policy designed ... to extend opportunity to the disadvantaged and the handicapped." 39 U.S.C. § 1003(b) (1982).

 This Court interprets sections 1001 and 1003 of the Postal Reorganization Act as not implying a private cause of action. Indeed, Reeder cannot cite to a single case in which a court has construed sections 1001 and 1003 as implying a private cause of action. In contrast, a number of courts have examined the Postal Reorganization Act generally and have concluded that the Act does not give rise to a private right of action. *See, e.g., Kaiser v. United States Postal Service*, 908 F.2d 47, 50–51 (6th Cir.1990); *Blaze v. Payne*, 819 F.2d 128 (5th Cir.1987); *Gaj v. United States Postal Service*, 800 F.2d 64, 68–69 (3d Cir.1986); *McGarigle v. United States Postal Service*, 904 F.2d 687, 692 n. 7 (Fed. Cir.1990); *Bey v. Bolger*, 540 F.Supp. 910, 917 (E.D.Penn.1982).

The Court finds most persuasive the analysis provided in the *Gaj* and *Blaze* opinions. In *Gaj*, a former Postal Service employee brought a claim under section 1001(b) of the Postal Reorganization Act.[6] The *Gaj* court examined the legislative history of the Postal Reorganization Act and concluded:

> The clear intent of Congress in passing the Postal Reorganization Act was to make the Postal Service an independent executive agency, to improve the efficiency of the mail system, to improve labor management relations, and to make the Postal Service self-supporting. *Neither the language of the statute nor its legislative history shows that Congress intended to create a private remedy.*

---

**6.** In *Gaj*, the plaintiff also brought a cause of action under § 1003(b), which the district court dismissed on the grounds that "adequate reme-

dies exist under the Rehabilitation Act of 1973." *Gaj*, 800 F.2d at 66.

*Gaj,* 800 F.2d at 68 (citation omitted and emphasis added).

A similar result was reached by the United States Court of Appeals for the Fifth Circuit in *Blaze.* In *Blaze,* an employee brought suit against the Postal Service under sections 1001 and 1003[7] of the Postal Reorganization Act after he was disciplined for his involvement in fight with another employee. In refusing to recognize an implied private cause of action in section 1001, the *Blaze* court opined: "[T]he Third Circuit's description of Congressional intent is, if anything, an understatement. There is no room for the weedlike implied remedy sought by Blaze in the flourishing garden of express employee remedies created pursuant to the Postal Reorganization Act." *Blaze,* 819 F.2d at 130.

Although no court has squarely addressed the narrow question of whether section 1003 of the Postal Reorganization Act implies a private cause of action, the *Gaj* and *Blaze* courts' thoughtful analysis of section 1001 can be applied to section 1003 to reach a similar result. Indeed, the *Blaze* court noted:

> We are authorized to imply private rights of action only if Congress can be fairly said to have intended them. To determine Congressional intent, "[w]e look first, of course, to the statutory language, particularly to the provisions made therein for enforcement and relief."

*Blaze,* 819 F.2d at 129 (quoting *Middlesex County Sewerage Auth. v. National Sea Clammers,* 453 U.S. 1, 122, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981)). As both the *Gaj* and *Blaze* courts observed, there is nothing in the language of the statute or its legislative history to indicate that Congress intended to imply a private right of action for section 1003. Moreover, the language in section 1003(b) is merely prescriptive—it does not provide any express method for enforcing a violation of its provisions. Therefore, the Court rejects Reeder's interpretation of the statute and dismisses Reeder's third and eighth causes of action.

## C. *Plaintiff's Fourth, Fifth, Ninth and Tenth Causes of Action—Defendant's Alleged Breach of Employment Contract and Breach of an Implied Covenant of Good Faith and Fair Dealing.*

Reeder alleges in his fourth, fifth, ninth and tenth causes of action that the Postmaster has breached Reeder's implied employment contract, as well as an implied covenant of good faith and fair dealing. Reeder bases his claims of implied contract on such expressions and documents as the Postal Service's representations, interviews, employee relations manuals and employee guidelines.

The Court rejects Reeder's characterization of his employment relationship with the Postal Service and finds that these causes of actions must be dismissed because federal employees do not serve pursuant to employment contracts. *See Riplinger v. United States,* 695 F.2d 1163, 1164–65 (9th Cir.1983); *Connolly v. United States,* 554 F.Supp. 1250, 1253, 1 Cl.Ct. 312 (Cl.Ct.1982).

Several cases clearly demonstrate that Postal Service employees do not serve pursuant to employment contracts. For example, in *Connolly,* a former probationary employee of the Postal Service brought suit challenging his dismissal. The court refused to examine the employee's claim under a contract theory noting, "Plaintiff's claim is not under a contract with the United States since it is well established that the federal employee relationship is a statutory rather than contractual one." *Connolly,* 554 F.Supp. at 1253 (citations omitted). Consistent with the *Connolly* court's treatment of this issue, other courts considering the issue have unanimously held that federal employees do not serve pursuant to employment contracts. *See also Riplinger v. United States,* 695 F.2d 1163, 1164–65 (9th Cir.1983) ("Though a distinction between appointment and contract may sound dissonant in a regime accustomed to the principle that the employment relationship has its ultimate basis in contract, the dis-

---

**7.** The plaintiff deserted his claim under section 1003(b) on appeal. *Blaze,* 819 F.2d at 129 fn. 2.

tinction nevertheless prevails in government service."); *Shaw v. United States,* 640 F.2d 1254, 1260, 226 Ct.Cl. 240 (1981) ("Federal officials who by act or word generate expectations in the persons they employ, and then disappoint them, do not *ipso facto* create a contract liability running from the Federal Government to the employee, as they might if the employer were not the government.").

Moreover, the Postal Reorganization Act expressly provides that postal employees serve pursuant to an appointment.[8] In *Boyd v. United States Postal Service,* 32 FEP 1217 (W.D.Wash.1983), *aff'd,* 752 F.2d 410 (9th Cir.1985), a district court dismissed a breach of contract claim, recognizing that postal employees are appointed and do not serve under employment contracts. The Ninth Circuit Court of Appeals affirmed, holding "as postal employees receive their employment rights through appointments to positions, and not as a result of personal contracts of employment, plaintiff's claim ... [that] the Postal Service breached an 'implied contract of employment' is without merit." *Id.,* at 1220.

Reeder argues that employment contracts for federal employees should be recognized because the United States Supreme Court, in *Loeffler v. Frank,* 486 U.S. 549, 556–57, 108 S.Ct. 1965, 1970, 100 L.Ed.2d 549 (1988), stated that by including a "sue-and-be-sued" clause in the Postal Service's charter, Congress intended to give the Postal Service the "status of a private commercial enterprise." Such a result does not necessarily follow from the Supreme Court's reasoning in *Loeffler,* and cannot be inferred from Congress' actions. Although this Court recognizes that Congress did envision a broader role for the Postal Service when it enacted the Postal Reorganization Act, Reeder has provided no evidence that Congress intended to change the underlying relationship between the Postal Service and its employees. Rather, the language in section 1001(a) of the Postal Reor-

ganization Act reinforces the opposite interpretation. *See* 39 U.S.C. § 1001(a) (1982) ("Except as otherwise provided in this title, the Postal Service shall *appoint* all officers and employees of the Postal Service.").

In short, federal employees, and particularly postal service employees, serve pursuant to appointments and not employment contracts. Therefore, Reeder's fourth and ninth causes of action regarding breach of his employment contract are dismissed. Moreover, because Reeder's employment is not governed by an employment contract, there is no claim for breach of an implied covenant of good faith and fair dealing. Accordingly, Reeder's fifth and tenth causes of action also are dismissed.

D. *Plaintiff's Second and Seventh Causes of Action—Defendant's Alleged Violation of Section 501[9] of the Rehabilitation Act of 1973.*

Reeder alleges that the Postal Service violated section 501 of the Rehabilitation Act. Section 501 requires the federal government to take affirmative steps to hire handicapped individuals. It provides: "It shall be the purpose and function of the [Interagency Committee on Handicapped Employees] ... to provide a focus for Federal and other employment of *individuals with handicaps....*" 29 U.S.C. § 791(a) (1982) (emphasis added). Moreover, section 7 of the Rehabilitation Act defines "individual with handicaps" as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 706(7)(B) (1982).

 In a case in which an employee asserts employment discrimination on the basis of a handicap, the employee has the initial burden of satisfying "the threshold requirement that [the employee] is a handi-

---

**8.** Section 1001(a) provides that "the Postal Service shall *appoint* all officers and employees of the Postal Service." 39 U.S.C. § 1001(a) (1982).

**9.** Section was amended and renumbered in 1978. It currently is numbered § 791. The Court elects to use the old section number for clarity because it is the number that the parties have used in their briefs.

capped person as defined by the statute." *Jasany v. United States Postal Service,* 755 F.2d 1244, 1248 (6th Cir.1985). Reeder avers that the record he has provided demonstrates that he could be deemed an "individual with handicaps" under all three of the criteria established in section 706(7)(B). Therefore, the Court will discuss each criterion individually.

i. Employee Has a Physical Impairment that Substantially Limits a Major Life Activity.

■ Reeder has alleged that his speech disorder is a substantial limitation on a major life activity. To recover under this theory, Reeder must meet the threshold requirement of proving that he has a handicap as such is defined by the Rehabilitation Act. Accordingly, Reeder must prove: 1) he has physical impairment; and 2) the impairment imposes a substantial impairment on a major life activity.

Neither the language of the Rehabilitation Act nor its legislative history provide a good definition of "impairment." However, the Department of Health and Human Services defines "physical impairment" as "any physiological disorder or condition ... affecting one or more of the following body systems ... including speech organs." Nondiscrimination on the Basis of Handicap in Programs and Activities Receiving Federal Financial Assistance, 45 C.F.R. § 84.3(j)(2)(i) (1991).

Applying the Department of Health and Human Services' definition to Reeder's speech disorder, his disorder can be characterized as an "impairment" because it presumably is a physiological disorder and it clearly affects his speech organs. However, an impairment cannot be classified as a handicap unless the impairment *substantially* limits a *major* life activity. The Utah Supreme Court examined the Utah statute, which utilizes the Rehabilitation

Act's definition of "handicap," and concluded:

If the Legislature contemplated a broad definition of the term "impairment," as the Commission has held, it clearly assigned two major qualifications with the words *substantially limits* and *major life activity.* Each limitation qualifies the types of "impairment" for which discrimination is forbidden, and each includes a word of magnification. The Legislature's apparent purpose was to prevent every termination or denial of employment on the basis of a physical or mental characteristic ("impairment") from constituting a prima facie case of discrimination on the basis of handicap.

Most or all persons have some physical or mental deviations from a norm or from personal or employer aspirations. Considerations of height, weight, sensory abilities, speech, pulse rate, blood pressure, and a whole variety of measures of mental ability are only a few characteristics whose variations can be deemed "impairments" under the broad definition discussed earlier. If the Legislature had intended that all employer decisions based on any such impairments would be forbidden as discrimination against the handicapped (unless justified as a bona fide occupational qualification), the statutory definition should have stopped with the word "impairment."

*Salt Lake City Corp. v. Confer,* 674 P.2d 632, 636 (Utah 1983) (emphasis in original); *see also School Board of Nassau County, Florida v. Arline,* 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987); *Forrisi v. Bowen,* 794 F.2d 931, 933–34 (4th Cir.1986); *Oesterling v. Walters,* 760 F.2d 859, 861 (8th Cir.1985).

In this case, the Court recognizes that Reeder's speech impairment affects a major life activity.[10] In Reeder's complaint, he avers that the speech impairment affects a major life activity—his ability to communicate.[11] Therefore, the dispositive

---

**10.** The Equal Employment Opportunity Commission has defined "major life activities" as "functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, *speaking,* breathing, learning, and *working.*" Equal Employment Opportunity in Federal Government, 29 C.F.R. § 1613.702(c) (1991) (emphasis added).

**11.** In Plaintiff's Memorandum to Defendant's Motion for Summary Judgment, Reeder also alludes to the fact that his speech impairment

issue is whether Reeder's speech disorder constitutes a "substantial impairment" to his ability to speak.

The Court believes that Reeder's speech disorder does not constitute such an impairment. The record reflects the fact that Reeder is able to communicate through speech. During Reeder's deposition, he was able to speak for approximately seven hours. Reeder spoke "intelligibly" and testified that the manner in which he spoke during his deposition was "typical" of his ability to speak generally. Memorandum in Support, at page 13.

Moreover, Reeder never officially declared his speech disorder when applying for employment with the Postal Service. The Postal Service has a form entitled "Identification of Physical/Mental Disability" on which Reeder could have reported his speech disorder. The form defines a "reportable disability" as a "physical or mental impairment that substantially limits one or more major life activities" and includes a category for speech impairments. Although Reeder now asserts that his speech impediment is a substantial limitation, he never formally declared his speech disorder on this form.

Additionally, Reeder has failed to provide an adequate medical record of his impairment. Although Reeder produced a lengthy list of the doctors and other professionals he visited, Reeder is unable to corroborate such visits with medical records or other evidence.

For the reasons cited above, this Court concludes that, when the evidence is construed in the light most favorable to Reeder as the summary judgment standard requires,[12] Reeder has failed to meet the threshold requirement of proving that his speech impairment substantially limits a major life activity.

### ii. Employee Has a Record of the Physical Impairment.

An employee may be deemed handicapped if the employee has a record of impairment. Although Reeder claims to have provided a record of his physical impairment, he has failed to provide such a record. Reeder did provide a lengthy list of doctors with whom he has consulted; however, Reeder admits that he has not consulted a doctor about his speech impediment since at least 1984. Moreover, in response to the Postmaster's discovery requests, the only medical records Reeder provided to corroborate the nature and purpose of his visits to the doctors he listed as having treated him for his speech impairment were medical records from John Aldrich, who expressly denied treating Reeder for his speech impairment. In the records that Dr. Aldrich provided, the only reference to Reeder's speech impairment is contained in the portion of the record reviewing his medical history. It states: "Reeder has had a problem with his larynx for many years. It is associated with some difficulty in speech." Memorandum in Support, at Exhibit 7.

affects another major life activity—his ability to work. The Court has reviewed this claim and finds that Reeder's speech disorder does not substantially affect his ability to work. In so holding, this Court has reviewed the seminal case *E.E. Black, Ltd. v. Marshall,* 497 F.Supp. 1088 (D.Haw.1980).

In *Black,* the court opined: "A person who is disqualified from employment in his chosen field has a substantial handicap to employment, and is substantially limited in one of his major life activities." *Id.* at 1099. In considering whether an impairment is a substantial limitation, the *Black* court noted that such a determination must be made on a case-by-case basis, and must include consideration of the "number and types of jobs from which the impaired individual is disqualified." *Id.* at 1100.

Reeder began his employment with the Postal Service in the Maintenance Systems Division as a level 4 employee. During his tenure with the Postal Service Reeder has been promoted to his current position in which he has supervisory responsibility for nine other employees. There is nothing in the record to suggest that Reeder's speech disorder has impaired, or will impair, his career advancement within the Postal Service. Indeed, Reeder has advanced from the ranks of the general Postal Service work force to management within the organization.

12. *See, e.g., Renfro v. City of Emporia, Kansas,* 948 F.2d 1529, 1533 (10th Cir.1991) ("we examine the facts most favorable to the party opposing summary judgment.").

In addition, Reeder asserts that he had surgery to remove nodules on his larynx. However, Reeder did not provide any proof that such a surgery took place, and that such surgery was undertaken to improve his speech impairment. Assuming Reeder's assertions are true, this Court finds that such evidence does not meet the threshold requirement of proving that Reeder is an individual with a handicap.

### iii. Employee is Regarded as Having a Handicap.

Reeder maintains that the Postal Service regards him as having a speech impairment. Reeder asserts that the fact another employee was given a thirty-day telecommunications detail in July, 1989 demonstrates that the Postal Service regards him as having a handicap. Reeder alleges that he was told by his supervisor, Kenneth McArthur ("McArthur"), that he was not given the telecommunications detail because of his speech impediment, and McArthur acknowledges [Reeder's] speech impediment was a minor factor in the decision to deny him the detail because the detail "was a solo operation that involved fairly heavy use of the telephone." Declaration of Kenneth McArthur in Support of Defendant's Motion for Summary Judgment, at ¶ 6 ("McArthur Declaration").

The Postal Service does not regard Reeder as handicapped merely because it concluded that his speech impairment could affect his ability to function effectively in the telecommunications detail that it awarded to another employee in July, 1989. As the United States Court of Appeals for the Fourth Circuit has noted: "Several courts have previously addressed this issue, deciding unanimously that an employer does not necessarily regard an employee as handicapped simply by finding the employee to be incapable of satisfying the singular demands of a particular job." *Forrisi v. Bowen*, 794 F.2d 931, 934 (4th Cir.1986) (citations omitted); *see also Daley v. Koch*, 892 F.2d 212 (2d Cir.1989); *Miller v. AT & T Network Sys.*, 722 F.Supp. 633, 640 (D.Or.1989), *aff'd*, 915 F.2d 1404 (9th Cir.1990). The *Forrisi* court reasoned that "[t]he statutory reference to a sub-stantial limitation indicates instead that an employer regards an employee as handicapped in his or her ability to work by finding the employee's impairment to foreclose generally the type of employment involved." *Id.* at 935.

In *Forrisi*, the plaintiff was a utility systems repairer and operator, a position that required the plaintiff to climb stairways and ladders. The plaintiff was terminated from his job because he suffered from acrophobia and could not perform such duties. *Id.* at 933. In refusing to uphold the plaintiff's claims under the Rehabilitation Act, the court stated: "Far from being regarded as having a 'substantial limitation' in employability, [the plaintiff] was seen as unsuited for one position in one plant—and nothing more." *Id.* at 935.

The Court finds persuasive the reasoning provided in the *Forrisi* opinion. Reeder was denied the telecommunications detail in part because it required heavy use of the telephone. However, this does not demonstrate that the Postal Service regarded Reeder as having a handicap. The telecommunications detail was merely one employment position. The Postal Service's refusal to grant Reeder this detail does not suggest that he would be precluded, generally, from the type of employment in which he is currently engaged, or for which he has received his training. The record clearly demonstrates that, during the course of Reeder's employment with the Postal Service, he has advanced from a craft employee, level 3, to management, level 14. Therefore, the Court concludes that Reeder's allegations and the evidence he has produced do not demonstrate the Postal Service regards Reeder as handicapped.

Reeder also asserts that the Postal Service has accommodated him because McArthur has not required him to carry a walkie talkie at work and McArthur avoids talking with him via the walkie talkie system. Memorandum in Opposition, at ¶ 15. However, McArthur explained that Reeder's job does not require use of a walkie talkie. Thus, Reeder's allegations with respect to

the walkie talkie are simply not material to the resolution of his claim.

Moreover, in his deposition Reeder admitted that during his career with the Postal Service "there has been no accommodation." Deposition of Ivan C. Reeder, at page 81, lines 15–16. Because the government has the responsibility to accommodate the employee,[13] and Reeder admits that the Postal Service has not made any such accommodations, Reeder's assertions that the Postal Service's treatment of Reeder in his current position demonstrate the Postal Service regards him as handicapped are without merit.

In summary, to prevail under section 501 of the Rehabilitation Act, Reeder must prove that he is an "individual with handicaps." Reviewing the record in the light most favorable to Reeder, as the summary judgment standard requires, this Court concludes that Reeder has not provided sufficient material and admissible evidence to support a prima facie claim under the Rehabilitation Act. Accordingly, the Court dismisses Reeder's second and seventh causes of action.

## IV. Conclusion

The Court, having read the pleadings and being fully apprised of the relevant facts and law, hereby grants the Postmaster's Motion for Summary Judgment in its entirety.

---

**13.** *See* Equal Employment Opportunity in Federal Government, 29 C.F.R. § 1613.704(a) (1991) ("An agency shall make reasonable accommodation to the known physical or mental limitations of a qualified handicapped applicant or employee....").