48 F.3d 1231
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Ronald J. GILBERT, Plaintiff-Appellant,
v.
Lloyd M. BENTSEN, Secretary, U.S. Department of the
Treasury, Defendant-Appellee.
 No. 94-1193.
(D.C. No. 90-N-2283)
 United States Court of Appeals, Tenth Circuit.
 Feb. 28, 1995.
 
 ORDER AND JUDGMENT[1]
 Before TACHA, BRORBY, and EBEL, Circuit Judges.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 On July 13, 1990, following an investigation initiated a year before, plaintiff was removed from his position as special agent for the Bureau of Alcohol, Tobacco and Firearms (ATF) based on several instances of misconduct between 1984 and 1987. After the Merit Systems Protection Board (MSPB) upheld his termination, plaintiff commenced this "mixed case" in district court, seeking judicial review of the MSPB's decision under the Administrative Procedures Act (APA), see 5 U.S.C. 7703(c), and a trial de novo of his associated claims of handicap discrimination under the Rehabilitation Act of 1973, 29 U.S.C. 701 et seq., and the Hughes Act, 42 U.S.C. 290dd-1. See generally Williams v. Rice, 983 F.2d 177, 179-80 (10th Cir.1993)(discussing "mixed case" procedure). Under the APA, plaintiff contended his termination could not be justified on the administrative record for various reasons. As for the statutory claims, plaintiff attributed his past misconduct to alcoholism, which was well-controlled by the time he was investigated, and alleged ATF had violated 791 & 794 of the Rehabilitation Act by discriminating against him on the basis of this handicap, and contravened 290dd-1(b) of the Hughes Act by terminating him on the basis of prior alcohol abuse. The district court first reviewed the administrative record and affirmed the MSPB's decision. The court then tried the statutory claims and found in favor of the government. This appeal followed.
 
 
 3
 We review the challenged administrative determination under the same deferential APA standards that constrained the district court. See, e.g., Williams, 983 F.2d at 180; Wilder v. Prokop, 846 F.2d 613, 621 (10th Cir.1988); see also Colorado Dep't of Social Servs. v. United States Dep't of Health & Human Servs., 29 F.3d 519, 522 (10th Cir.1994) (stating that administrative record is reviewed independently, with no deference to district court's assessment). With respect to plaintiff's employment discriminations claims, on the other hand, we look to the district court's original disposition, reviewing its legal conclusions de novo and its factual findings for clear error. See EEOC v. Ackerman, Hood & McQueen, Inc., 956 F.2d 944, 946 (10th Cir.), cert. denied, 113 S.Ct. 60 (1992). Upon consideration of the record and the parties' briefs in light of these standards, we affirm the judgment entered for the government in all respects, as explained below.
 
 Administrative Review
 
 4
 The underlying, largely undisputed facts relating to plaintiff's dismissal have been recounted on several occasions and need not be recited again here. The MSPB approved the dismissal, sustaining five charges of misconduct: (1)misuse of a government vehicle; (2)use of official position for purposes unrelated to official duties; (3)conduct unbecoming an ATF special agent; (4)association with a person known to be connected with illegal activities; and (5)unauthorized use of the treasury enforcement communication system (TECS).
 
 
 5
 We have assessed the MSPB's findings of misconduct against the administrative record and conclude, as did the district court, that they are supported by substantial evidence. Indeed, the evidentiary bases for many of these findings are not even challenged on appeal, though, as noted below, plaintiff has raised several other objections to the administrative approval of his termination. To the extent they are challenged, however, we defer to the plausible credibility assessments, substantiated factual determinations, and reasonable inferences made by the MSPB. See generally NLRB v. Dillon Stores, 643 F.2d 687, 692-93 (10th Cir.1981).
 
 
 6
 Apart from the findings of misconduct in themselves, plaintiff objects to the penalty imposed therefor in several respects, none of which we find persuasive. With regard to the mitigation, service-nexus, and delay issues he has raised, we shall not substitute our own judgment for the reasonable and thorough rationale articulated by the MSPB in support of its decision. See Colorado Dep't of Social Servs., 29 F.3d at 522; Williams, 983 F.2d at 180.
 
 
 7
 Plaintiff's final challenge to the MSPB's decision rests on the contention that ATF violated his right of association by punishing him, at least in part, for his close, personal relationship with Mr. Adams (the "person known to be connected with illegal activity" in the fourth charge of misconduct). In resolving such a constitutional claim, even on administrative review, this court must determine for itself the proper balance to be struck between the competing private and governmental interests involved.[2] Burke v. Board of Governors of the Fed. Reserve Sys., 940 F.2d 1360, 1367 (10th Cir.1991)(reviewing claims of constitutional abuses by agency de novo, consistent with 5 U.S.C. 706(2)(E)). Plaintiff contends that, even assuming (as the MSPB found and we have affirmed) that Mr. Adams was known to be connected with illegal activity, his intimate relationship with Mr. Adams implicated constitutional protections precluding his termination for maintaining the association. The primary support cited for this contention is Wilson v. Taylor, 733 F.2d 1539 (11th Cir.1984), which held that a policeman fired for dating the daughter of a reputed organized crime figure had lost his job "for a reason infringing upon his constitutionally-protected freedom of association," id. at 1544 (footnote omitted).
 
 
 8
 Actually, Wilson provides little, if any, support for plaintiff. The Eleventh Circuit expressly limited its holding to the recognition of an associational right implicated by a police officer's social relationships; the defendant city never argued that the nature of the plaintiff's police work justified curtailment of that right. Id. at 1544 n. 3. Thus, the court "ch[o]se not to render an advisory opinion on what conduct would be sufficient for termination of a police officer who associates with certain felons, indicted individuals, suspects, or their relatives." Id. Indeed, the court specifically noted authority supporting the discipline of law enforcement officers "because of associations with others." Id. (citing Shawgo v. Spradlin, 701 F.2d 470, 482-83 (5th Cir.), cert. denied, 464 U.S. 965 (1983), which upheld a prohibition on police officers' cohabitation in light of "exigencies of Department discipline").
 
 
 9
 In contrast, here the government argued--and presented supporting evidence--that plaintiff's association with Mr. Adams was both improper in itself and the cause, directly or indirectly, of virtually all of plaintiff's other misconduct,[3] professionally impacting plaintiff and his office in a serious, adverse manner. Under the circumstances, we hold that valid governmental interests justified plaintiff's dismissal, despite the resultant infringement on his associational rights. See Baron v. Meloni, 602 F.Supp. 614, 617-18 (W.D.N.Y.) (upholding dismissal of deputy sheriff for continued association with estranged wife of crime figure, "a position which might invite exploitation and discredit the department"), aff'd without op., 779 F.2d 36 (2d Cir.1985), cert. denied, 474 U.S. 1058 (1986). With that conclusion, we complete our administrative review of the MSPB's decision.
 
 Statutory Claims
 
 10
 Plaintiff jointly invokes 791 and 794 of the Rehabilitation Act as the statutory basis for his claim of handicap discrimination. This circuit has made it clear, however, that 791 provides the Act's exclusive remedy for discrimination in federal employment. Johnson v. United States Postal Serv., 861 F.2d 1475, 1477-78 (10th Cir.1988), cert. denied, 493 U.S. 811 (1989); Coleman v. Darden, 595 F.2d 533, 538 (10th Cir.), cert. denied, 444 U.S. 927 (1979); Reeder v. Frank, 813 F.Supp. 773, 777 (D. Utah 1992), aff'd, 986 F.2d 1428 (10th Cir.) (table), cert. denied, 114 S.Ct. 61 (1993).
 
 
 11
 We shall not linger over potential differences in the procedure or scope of the two provisions, see generally Barth v. Gelb, 2 F.3d 1180, 1183-86 (D.C.Cir.1993), cert. denied, 114 S.Ct. 1538 (1994); Doe v. Garrett, 903 F.2d 1455, 1459 (11th Cir.1990), cert. denied, 499 U.S. 904 (1991), but instead focus on the common ground pertinent here, which is the prohibition of discrimination on the basis of handicap, see Johnston v. Horne, 875 F.2d 1415, 1418 (9th Cir.1989); see also Johnson, 861 F.2d at 1477. Moreover, because the district court's rationale for rejecting plaintiff's discrimination claim--that his handicap was not the basis for dismissal--is equally dispositive under either provision, and because the parties have not objected to or even addressed the court's use of general, undifferentiated standards in its determination, we shall look to pertinent authority for guidance without regard to whether it arises from a government (791) or private (794) discrimination context. See, e.g., Overton v. Reilly, 977 F.2d 1190, 1193 (7th Cir.1992)(similarly ignoring any potential, unaddressed differences between 791 & 794 where "issue on which the district court granted ... judgment is identical (or at least substantially similar) under both provisions").
 
 
 12
 Plaintiff asserts that "an employer 'relies' on a handicap when it justifies termination based on conduct caused by the handicap," Teahan v. Metro-North Commuter R.R., 951 F.2d 511, 516 (2d Cir.1991), cert. denied, 113 S.Ct. 54 (1992), and argues that he has established the requisite causal connection here.[4] The district court conducted an extensive examination of plaintiff's various incidents of misconduct and the operative role his alcoholism may have played therein, see R. Supp. Vol. I at 7-15, and concluded:
 
 
 13
 In short, my finding is that the acts for which Mr. Gilbert was terminated were acts that had very little to do with his alcoholism. They had everything to do in the sense of being motivated by his friendship with Mr. Adams and his desire to do things for Mr. Adams that were very improper.
 
 
 14
 ....
 
 
 15
 Put another way, it seems to me that just because you have a handicap, whether it be alcoholism or diabetes or epilepsy or what have you, if you are terminated for the reasons that have been articulated by the [ATF], and if there is no connection, and by that I mean no causal connection between your alcoholism and the reasons for termination, it seems to me you are not an otherwise qualified individual. And that is what I find and conclude in this case.
 
 
 16
 Id. 15-17. The case law supports the analytical connection between employee misconduct and job qualification drawn by the district court, see, e.g., Little, 1 F.3d at 259; see also Pushkin v. Regents of Univ. of Colo., 658 F.2d 1372, 1385 (10th Cir.1981)("The two factors [job qualification and causal nexus between handicap and adverse action] are interrelated, since if the individual is not otherwise qualified he cannot be said to have been rejected solely because of his handicap."), and the record supports the court's findings regarding causation, with one minor reservation noted immediately below.
 
 
 17
 The January 31, 1987 incident underlying the charge of conduct unbecoming a special agent, in which the intoxicated plaintiff abusively demanded the release of Mr. Adams following a DUI arrest, involved the violation of agency orders (1)prohibiting excessive use of intoxicants and (2)requiring maintenance of favorable, working relationships with other law enforcement agencies. Admin. R. Vol. VI at 1319-20. The former misconduct would certainly appear to be related to plaintiff's alcoholism, as Dr. Hazlehurst, an expert in alcohol rehabilitation, recognized. Admin. R. Vol. VII at 139; R. Supp. Vol. II at 77-78. The district court did not, however, specifically address this particular aspect of the January 31, 1987 incident.
 
 
 18
 Nevertheless, we think the district court's overall holding that plaintiff failed to satisfy the causation requirement for a Rehabilitation Act claim is still correct. The supervisor responsible for plaintiff's termination testified that, while he considered the conduct unbecoming a special agent plaintiff's most serious violation, even if the whole incident of January 31, 1987, were discounted, he would still have dismissed plaintiff on the basis of the four other charges. Admin. R. Vol. VII at 104. Mindful of the strict "sole factor" causation requirement imposed on Rehabilitation Act claims, see Bentley v. Cleveland County Bd. of County Comm'rs, 41 F.3d 600, 605-06 (10th Cir.1994)(comparing Act's "sole factor" requirement with laxer causation requirements of Title VII and other antidiscrimination statutes), we agree that, on our record, it cannot be said that plaintiff's termination "resulted from the handicap and from the handicap alone," Johnson ex rel. Johnson v. Thompson, 971 F.2d 1487, 1493 (10th Cir.1992), cert. denied, 113 S.Ct. 1255 (1993).
 
 
 19
 Finally, the district court rejected plaintiff's Hughes Act claim "following essentially the [same] analysis [used] for the [R]ehabilitation [A]ct, and that is that although he was an alcoholic, the reasons for his termination had nothing to do with his alcoholism...." Admin. R. Supp. Vol. I at 17. Plaintiff does not challenge the district court's analytical approach, but only its factual conclusion regarding the basis for his termination. Accordingly, we affirm the district court's rejection of plaintiff's claim under the Hughes Act for essentially the same reasons as those explained above in connection with the Rehabilitation Act.
 
 
 20
 The judgment of the United States District Court for the District of Colorado is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Throughout this case, plaintiff has based his associational rights claim on the First Amendment, though his allegations do not implicate the "expressive association" protected thereunder but, rather, the "intimate association" protected by substantive due process principles. See generally Roberts v. United States Jaycees, 468 U.S. 609, 617-20, 622 (1984); Trujillo v. Board of County Comm'rs, 768 F.2d 1186, 1188-89 (10th Cir.1985). The confusion appears to derive from the pre-Roberts decision of Wilson v. Taylor, 733 F.2d 1539 (11th Cir.1984), which plaintiff relies on for establishing the associational rights of police officers in purely social contexts, see id. at 1542-44. This court recognized ten years ago that Wilson 's use of the First Amendment is inconsistent with the Supreme Court's subsequent clarification of the constitutional sources of intimate and expressive associational rights in Roberts. See Trujillo, 768 F.2d at 1188 n. 4; accord Swank v. Smart, 898 F.2d 1247, 1252 (7th Cir.), cert. denied, 498 U.S. 853 (1990); IDK, Inc. v. Clark County, 836 F.2d 1185, 1192 (9th Cir.1988). Accordingly, the test we apply to resolve the constitutional issue raised here is whether, in light of the state interests served and private interests disrupted, ATF's ban on fraternization with persons involved in illegal activity constituted an "undue burden" on plaintiff's associational rights. Griffin v. Strong, 983 F.2d 1544, 1547 (10th Cir.1993)
 
 
 [3]
 Without reciting the details, we note that plaintiff misused his government vehicle and abused his official position in improper attempts to help Mr. Adams evade responsibility for illegal conduct, engaged in conduct unbecoming a special agent during one of those attempts, and inappropriately used TECS data relating to Mr. Adams in the course of their relationship
 
 
 [4]
 There appears to be some disagreement among the circuits on the point of law quoted above, as at least one court has held that the dismissal of an alcoholic for conduct grossly improper in itself, though concededly alcohol-related, does not involve action taken solely on account of the underlying handicap, within the meaning of the Rehabilitation Act. See Little v. FBI, 1 F.3d 255, 258-59 (4th Cir.1993); Gcf. Taub v. Frank, 957 F.2d 8, 11 (1st Cir.1992)(distinguishing, for purposes of causal connection to underlying handicap of addiction, simple drug possession from possession for distribution, and noting causal relationship "is simply too attenuated" to bring latter within scope of Act). However, given this court's previous holding that handicap discrimination may be established by showing "that reasons articulated for the [dismissal] other than the handicap [nevertheless] encompass unjustified consideration of the handicap itself," Pushkin v. Regents of Univ. of Colo., 658 F.2d 1372, 1387 (10th Cir.1981)(emphasis added), we consider the merits of the issue on the facts