

ting benefits; the Court determines only that section 3212(c)(1) does *not* cover that situation.

Plaintiffs' do not dispute the fact that Metropolitan's action in this case did not constitute "execution" in the sense of a legal proceeding, as defined in New York Insurance Law section 3212(a)(4). Plaintiffs' only argument has been that that definition should be interpreted expansively to include the "self-help" recoupment that occurred here. Because the Court has determined as a matter of law that section 3212 does not apply to the undisputed facts of this case, Defendant's motion for summary judgment must be granted (and Plaintiffs' motion denied) on Count VI.

## ORDER

In accordance with the foregoing, it is hereby ORDERED that

1. Defendant's motion for summary judgment on Counts II, III and VI be, and is hereby, GRANTED; and

2. Plaintiffs' motions for summary judgment on Counts II, III, and VI be, and is hereby, DENIED.

Jon Holder, Holder & Grover, P.A., Portland, Me., for plaintiff.

Andrew L. Freeman, Senior Labor Atty., Office of Field Legal Services, Northeast Region, U.S. Postal Service, Windsor, Conn., Jay P. McCloskey, Asst. U.S. Atty., Bangor, Me., for defendants.

## MEMORANDUM AND ORDER

CYR, Chief Judge.

Plaintiff, a former Postal Service employee, sues for reemployment on the basis of civil service law, civil rights statutes, and contract law. *See generally,* Memorandum on Objections to Magistrate's Recommended Decision, July 18, 1986 [discussing history of plaintiff's litigation and various claims asserted by plaintiff]. Previously, the court granted defendant's motions for summary judgment on two counts of the complaint, required supplementation of the record as to the claims alleging age discrimination and reprisal, and denied defendant's motion for summary judgment on count III, which alleges a breach of contract. *See* Order on Objections to Magis-

**Carl P. BAADE, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE and Raymond Bolger, Postmaster General, Defendants.**

Civ. Nos. 81–0027–B, 83–0446–B.

United States District Court, D. Maine.

July 15, 1987.

trate's Recommended Decision, July 8, 1986. Defendants request reconsideration of the court's denial of summary judgment on count III.

The breach of contract claim set forth in count III arises from an offer of employment allegedly made to, and accepted by, plaintiff, but never honored by defendants. Plaintiff worked as a letter carrier until 1977, when he injured his foot. When plaintiff found that he could not meet the physical demands of his former position, he requested reinstatement in a "light-duty" position. Upon the failure of the Postal Service to employ plaintiff in a light-duty position, plaintiff filed a series of complaints alleging age and handicap discrimination. In December 1981, plaintiff sought informal Equal Employment Opportunity counseling,[1] alleging that he had not been selected for a position that was open in November 1981 because of handicap discrimination. Apparently as a result of this informal counseling, the Postmaster of the Portland, Maine, Post Office extended an offer of full time employment to plaintiff, conditioned on medical approval by the Office of Personnel Management.[2] Plaintiff alleges that he accepted the offer of employment in the manner required by the offer, and that he obtained the required medical approval, but that he was never appointed to the position.[3]

Defendants moved for summary judgment on this portion of plaintiff's complaint on the grounds that individuals derive their right to employment with the Federal Government through appointment to a position, not by contract, and that even if there is an enforceable contract of employment, judicial review of such a contract would be precluded by the finality provision of the grievance procedures applicable to Postal Service employees under the collective bargaining agreement.

The court denied defendants' motion, relying on *Miles v. United States Postal Service*, 561 F.2d 1348 (9th Cir.1977). In *Miles*, plaintiff sued the Postal Service for breach of contract, alleging that he had been promised that he would be appointed to a full-time position, but had been allowed

---

1. "Informal" counseling, or "precomplaint processing," is a prerequisite to a formal complaint with the Equal Employment Opportunity Commission. *See* 29 C.F.R. §§ 1613.213, 1613.214.

2. The offer of employment, dated January 18, 1982, states as follows:

   Dear Mr. Baade:
   Based upon medical approval by the Office of Personnel Management, this is to offer you reinstatement to a full time position with the U.S. Postal Service. This position is located at the Portland Post Office as a Full Time Distribution Clerk in the following assignment: Assignment No. 720 Duty Hours—Mon. 0001–0850, Thurs. Fri. Sat. Sun. 2250–0700, Days Off—Tues. Wed., Primary Area of Assignment City, A Scheme Required.
   According to information from Office of Personnel Management, medical approval would have to be given by Office of Personnel Management before you could be placed in the above position. They further advise that if you return to duty and are unable to perform, your disability retirement would have to be reapproved if you could not continue to work. Return to duty status may result in a lower retirement annuity since at the present time your annuity is computed from the effective date of approval of your disability retirement, plus ensuing, cumulative retiree COLAs. We are enclosing a copy of position description for Distribution Clerk. If you call Mary

   L. Hodgetts, Supervisor, Employment Services, at 780–3456, she will arrange an appointment with you for full discussion of this offer. Please provide an answer to the above offer by February 10, 1982, on the attached sheet, and if you desire reemployment we will forward your request through proper channels to the Senior Assistant Postmaster General for forwarding to the Office of Personnel Management. If you believe the proposed offer of reemployment does not meet the requirements of Office of Personnel Management regulations and those of the U.S. Postal Service, you may appeal to the Merit System Protection Board within 20 days from the date of offer or 20 days after the date of reemployment, whichever is later. A copy of Merit Systems Protection Board Appeals Form is enclosed.
   Sincerely,
   Alfred V. Cashman
   MSC Manager/Postmaster
   Portland, ME 04101
   Plaintiff's Statement of Facts, Appendix, at 18.

3. The deposition testimony of Alfred Cashman indicates that plaintiff accepted the position and had no medical restriction, but was not appointed because plaintiff refused to drop his pending civil rights action against the Postal Service. *See* Plaintiff's Statement of Facts, Appendix, at 21–25; *see also* Defendants' Statement of Facts, at 4–5.

to work only 30 hours a week after he began his employment. In *Miles*, as here, the Postal Service moved to dismiss on the ground that plaintiff derived his rights as an employee by appointment, not by contract. The Ninth Circuit recognized that "[i]t is true that, absent legislation, federal employees derive the benefits and obligations of their official positions from appointment to that position, rather than from any contractual relationship created by that appointment." 561 F.2d at 1349 [citations omitted]. The Ninth Circuit held, however, that Congress had created "a statutory right to sue for breach of contract" by enacting 39 U.S.C. § 1208(b), which provides as follows:

> (b) Suits for violation of contracts between the Postal Service and a labor organization representing Postal Service employees, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy.

39 U.S.C. § 1208(b) (quoted in 561 F.2d at 1349). The court acknowledged that the language of the statute refers only to labor organizations. The language of the statute is virtually identical to the language of section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a), which had been construed to grant individual nonunion employees, as well as labor organizations, the right to sue for breach of contract. Thus, by analogy to the LMRA, the court concluded that "39 U.S.C. § 1208(b) creates a statutory right to sue for breach of contract that may be maintained by individual Postal Service employees as well as the labor organizations representing union employees." 561 F.2d at 1350.

The court found *Miles* to be persuasive. The only other reported case discussing *Miles, Lofton v. United States Postal Service,* 592 F.Supp. 36 (S.D.N.Y.1984), agreed that an individual had standing to sue under section 1208(b). *See id.* at 38 [holding that although individual had a right to sue, existence of collective bargaining agreement limited scope of suit to contention

that union had breached its duty of fair representation].

Defendants seek to distinguish *Miles* and cite new authority in support of their motion for reconsideration. Specifically, defendants argue that *Miles* and *Lofton* apply only to persons who are *appointed* to positions, and thus who already are "employees." In contrast, in this case, plaintiff never was appointed to any position, and thus is not an "employee" with standing to sue under § 1208(b), even as construed by the *Miles* court.

It is difficult to distinguish the facts of *Miles* from the instant case. Although Miles was appointed to a position, and thus served as an employee for a period of time, he had resigned by the time of the suit. Moreover, his contract claim did not arise while he was an employee, but was the result of a promise allegedly made prior to Miles' appointment. Miles' contract claim was not the result of a variance between his appointed position and his actual position, but resulted from the difference between the position allegedly promised to him, and the position to which he was appointed. Thus, the only factual distinction between this case and *Miles* is that plaintiff alleges that he was promised a position, but was never appointed. Whereas Miles alleged that he was promised one position, but was appointed to another. For the purpose of distinguishing between rights derived by appointment versus rights derived by contract, it is not at all clear that this distinction makes any difference.

Nevertheless, on reconsideration, the court finds that Congress did not intend, in enacting 39 U.S.C. § 1208(b), to grant individual applicants for Postal Service positions the right to sue for breach of contract in the event that an applicant is not appointed to a promised position. Congress specifically has required that, with limited exceptions not applicable here, "the Postal Service *shall appoint* all officers and employees of the Postal Service." 39 U.S.C. § 1001(a) [emphasis added]. In *Donald W. McLean,* 209 Ct.Cl. 720, 538 F.2d 346 (1976), the Court of Claims held that this provision barred the contract claim of an

individual who was promised a position with the Postal Service but subsequently was informed that no position was available. Similarly, in *Harris v. United States Postal Service,* Civ. No. 85–75408 (E.D. Mich. July 17, 1986), and *Boyd v. United States Postal Service,* 32 F.E.P. Cases 1217 (W.D.Wash.1983), *aff'd on other grounds,* 752 F.2d 410 (9th Cir. 1985), the courts held that an applicant for employment, even if promised a position, had no claim for breach of contract.

In *National Treasury Employees Union v. Reagan [NTEU],* 663 F.2d 239 (D.C. Cir.1981), the court further distinguished between an "appointee" and an "employee" for the purpose of determining whether individuals unconditionally selected for Government positions, but prevented from working because of a hiring freeze, had any rights against the Government. The plaintiff class in *NTEU* consisted of persons who were issued written confirmation of their selection for employment and told to report for work on a date certain, but who were subsequently informed that their appointment was withdrawn because of a hiring freeze imposed by the President. Quoting *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 156, 2 L.Ed. 60 (1803), the court noted that an appointment takes place "when the last act to be done by the [appointing authority] was performed." 663 F.2d at 242. In *NTEU,* the court held that plaintiffs had been "appointed" to their positions by virtue of the *uncondi-* *tional* letter of selection sent to each plaintiff which stated when *individual* plaintiffs should report to work.[4] Plaintiffs were not, however, entitled to relief. The court held that the statutory protection due federal employees is available only to persons who satisfy the statutory definition of "employees," *see* 5 U.S.C. § 2105(a). Thus, to be entitled to statutory protection, an individual must be appointed, must engage in "the performance of a Federal function …" and must be "subject to the supervision of [a federal officer] while engaged in the performance of the duties of his position." 663 F.2d at 246 (quoting 5 U.S.C. § 2105(a)). After considering the history and purposes of the power of appointment, the court further concluded that there is virtually no protection for federal appointees, and that an appointment may be revoked at the will of the appointing officer. 663 F.2d at 246–47.

Plaintiff's position in this case is not as strong as that of plaintiffs in *NTEU.* Plaintiff's offer of employment was *not* unconditional, *see* note 2 *supra,* and plaintiff never was given a date certain on which to begin employment. Moreover, even assuming that plaintiff was "appointed" to a position with the Postal Service by virtue of the offer of employment and his acceptance of it, there is no dispute that plaintiff never worked for the Postal Service in any capacity following the offer of employment. Thus, plaintiff's rights, if

---

**4.** The Government had argued that none of the plaintiffs had been appointed because according to the Federal Personnel Manual the last step in the appointment process is the filing of a "Standard Form 50." *See* 663 F.2d at 242–45. The court rejected this argument:

It appears to us that the federal government played hide-and-seek with job-seekers, assuring them that jobs awaited them and only later—on occasion, after the prospective employee had acted on the assurance of a job—reversing itself. Not one of the approximately 20,000 members of the class which is the subject of these cases received a letter stating that he had been conditionally selected, subject to budgetary factors. Not one received a letter stating that he had been conditionally selected, subject to the discretion of the appointing officer to change his mind at any time prior to the completion of the Standard Form 50. All class members received letters

stating that they had been selected for employment and should report for work on a certain date in the future.

Underlying this system of apparent government indifference to the consequences of its actions has been the fiction of the Form 50, backed by predictions of the dire consequences that would follow if the fiction were to be retired. A fiction supported by speculation cannot, however, bear the burden urged upon it by the Government. On the basis of our analysis of the appointment procedures in use in these cases, as established by the Personnel Manual and the other evidence, we believe that the completion of the Form 50 was not the "last act" required of the appointing authorities within the meaning of *Marbury.* The members of the class before us were appointed to the positions for which they were unconditionally selected.

*Id.* at 245–46 [footnotes omitted].

any, are those of an "appointee," whose appointment is subject to revocation at the will of the appointing officer. *See Harris,* slip op. at 11–12 [Promise to applicant for Postal Service position was, at best, an appointment revocable at the will of the appointing officer].

In view of the statutory requirement that Postal Service employees be appointed to their positions, *see* 39 U.S.C. § 1001(a), and the well-established law governing the power to appoint and the concomitant power to revoke an appointment, *see generally NTEU,* 663 F.2d at 246–47, it would be anomalous to conclude that 39 U.S.C. § 1208(b) implicitly grants an applicant for employment the right to sue for breach of contract. Accordingly, defendants' motion for summary judgment on count III of the complaint is *GRANTED.*

In the court's previous order, the parties were directed to supplement the record on six different matters relevant to plaintiff's claims of handicap discrimination and reprisal. Within 10 days of entry of this order the parties shall advise the Clerk of Court, in writing, as to whether the supplementation required by the court is complete.

SO ORDERED.