**Vincent FRAGINALS, et al., Plaintiffs,**

v.

**POSTMASTER GENERAL, Defendant.**

No. 02–20905–CIV.

United States District Court,
S.D. Florida,
Miami Division.

April 24, 2003.

Brian David Albert, Esq., North Miami Beach, FL, for Plaintiffs.

Bob Bondi, Assistant United States Attorney, United States Attorneys Office, Miami, FL, for Defendant.

## ORDER GRANTING MOTION TO DISMISS

K. MICHAEL MOORE, District Judge.

**THIS MATTER** is before the Court upon the motion of the Defendants, John E. Potter, Postmaster General, and the United States Postal Service, requesting dismissal with prejudice of Plaintiffs' First Amended Complaint. The Court, after having considered the motion, the responses thereto, and being otherwise fully advised in the premises, enters this order granting Defendant's Motion to Dismiss.

## FACTUAL BACKGROUND

The sixty-four (64) named Plaintiffs initially were employed by Emery Worldwide Inc. ("Emery"), a mail processing and distribution company. Pursuant to a contract, Emery provided out-sourced mail processing services to the Postal Service at the Miami, Florida, Priority Mail Processing Center ("Miami PMPC"). Under this arrangement, the Plaintiffs were employees of Emery.

The Postal Service terminated its out-sourcing contract with Emery effective January 7, 2001. Effective that same date Emery permanently terminated the Plaintiffs' employment with Emery. In the meantime, the Postal Service hired the Plaintiffs for temporary, non-career, at will, positions to be effective January 7, 2001.

The Plaintiffs allege that in the first quarter of 2001, after beginning work for the Postal Service as temporary employees, Mike Ciruzzi, Plant Manager of the Miami PMPC, informed the Plaintiffs they would be granted full-time (career) employment with the Postal Service if they took and passed the postal entrance examination. Plaintiffs also allege Mr. Ciruzzi and Karen Smith, Manager of Distribution Operations at the Miami PMPC, both re-

peated the conditional offer of full-time employment to Plaintiffs on several occasions throughout 2001.

Plaintiffs further allege they all registered for, took, and passed the postal entrance examination in reliance on the Postal Service's conditional offer of employment; they did not look for other employment, left other part-time employment, and rejected offers of employment from other employers in reliance on the conditional offer of employment from the Postal Service. Instead of being offered career employment with the Postal Service, they were terminated from their temporary positions on December 27, 2001.

### MOTION TO DISMISS STANDARD

■ A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milburn v. United States,* 734 F.2d 762, 765 (11th Cir.1984). On such a motion to dismiss, the Court notes that it must construe the complaint in the light most favorable to the plaintiff and accept the factual allegations as true. *SEC v. ESM Group, Inc.,* 835 F.2d 270, 272 (11th Cir.), *cert. denied sub nom. Peat Marwick Main & Co. v. Tew,* 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988). Further, the Court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (citations omitted); *The South Fla. Water Mgmt. Dist. v. Montalvo,* 84 F.3d 402, 406 (11th Cir.1996). Specifically, "[i]t is a well-settled principle of law that 'a complaint should not be dismissed merely because a plaintiff's allegations do not support the particular legal theory he advances, for the court is under a duty to examine the complaint to determine if the allegations provide for relief on *any* possible theory.'" *Bowers v. Hard-*

*wick,* 478 U.S. 186, 201–02, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986) (Blackmun, J., dissenting); *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir.1997). Nonetheless, to withstand a motion to dismiss, it is axiomatic that the complaint must allege facts sufficiently setting forth the essential elements of a cause of action.

### DISCUSSION

The First Amended Complaint contains one count alleging wrongful termination/breach of contract. Plaintiffs allege Defendants conveyed a conditional offer of employment to Plaintiffs; Plaintiffs met the condition required of the offer (taking and passing the postal examination), thereby accepting the employment contract; Defendants failed to meet their obligations under the employment contract, thereby breaching the employment contract; and Defendants terminated Plaintiffs in violation of the contract, which constituted wrongful termination.

The Court concludes the Plaintiffs have failed to state a claim upon which relief can be granted. As explained more fully below, Postal Service employees are not employed pursuant to employment contracts. They are appointed to positions. Such appointments can be lawfully revoked at any time up to the point an employee actually commences the duties of the position to which he or she was appointed.

In *Boyd v. United States Postal Service, et al.,* 32 Fair Empl. Prac. Cas. (BNA) 1217 (W.D.Wash.1983), *aff'd on other grounds,* 752 F.2d 410 (9th Cir.1985), the plaintiff, who had previously worked for the Postal Service and then resigned to attend school, subsequently sought reinstatement with the Postal Service several years later. His request for reinstatement was denied. When Mr. Boyd later filed

suit, he alleged a personnel assistant had promised him he would be reinstated. Mr. Boyd brought a claim for breach of an implied contract. Following a bench trial, the court entered judgment for the Postal Service.

The Court finds that no such promise [of reinstatement] was made to plaintiff by Linda Smith. But even if such a promise of employment was made, no cause of action arises from the promise. It is well settled that employees of the federal government derive the benefits and obligations of their official positions from the fact of appointment rather than from any contractual relationship. *Leland v. United States*, 213 F.2d 732, 733 (1977). The United States Postal Service is "an independent establishment within the executive branch of the government of the United States" (39 U.S.C. § 201), whose officers and employees serve through "appointments" (39 U.S.C. § 1001(a)).[1] Accordingly as postal employees receive their employment rights through appointments to positions, and not as a result of personal contracts of employment, plaintiff's claim that his failure to be reinstated to a position in the Postal Service breached an "implied contract of employment" is without merit.

The Court also concludes that plaintiff was never in fact "appointed" to a position in the Postal Service. Even if the Court found that plaintiff had somehow, as a result of his conversations with Linda Smith, received an appointment, that appointment was clearly revoked by Marjorie Cochran's letter of September 11, 1980, informing plaintiff that he would not be reinstated. As employment officer, Cochran clearly had the authority to revoke the appointment. As an appointment to a federal job may be revoked at any time up to the point the employee actually commences the duties of the position to which he has been appointed, no action arises in this case from the fact of revocation.

In *McLean v. United States*, 538 F.2d 346, 1976 WL 23846 (Ct.Cl.1976)(unpublished disposition), the plaintiff sued for lost wages on his claim of breach of contract and for specific performance of the alleged contract, alleging he was promised a job as a mail handler by the Postal Service. Before he could begin work, he was informed the job was no longer available. The court granted the defendant's motion to dismiss, holding the plaintiff never had a contract, because 39 U.S.C. § 1001(a) provides that all officers and employees of the Postal Service are required to be appointed rather than hired by contract.

*Baade v. United States Postal Service*, 664 F.Supp. 627 (D.Me.1987), involved a plaintiff who had worked for the Postal Service as a letter carrier, and after injuring his foot, went on disability retirement. He subsequently requested reinstatement in a "light-duty" position, which was denied. After he filed an EEO complaint, the Postal Service extended a written offer of full-time employment to the plaintiff, conditioned on medical approval by the Office of Personnel Management. Plaintiff accepted the offer, obtained the required medical approval, but was not rehired by the Postal Service. He filed suit, alleging a breach of contract, among other claims. The court granted summary judgment on the contract claim, finding that employees serve by appointment pursuant to 39 U.S.C. § 1001(a). Applicants for employment, even if promised a position, have no claim for breach of contract under 39

---

1. 39 U.S.C. § 1001(a) states that "[e]xcept as otherwise provided in this title, the Postal Service shall appoint all officers and employees of the Postal Service."

U.S.C. § 1208(b) when they are denied postal employment.

In view of the statutory requirement that Postal Service employees be appointed to their positions, *see* 39 U.S.C. § 1001(a), and the well-established law governing the power to appoint and the concomitant power to revoke an appointment, *see generally NTEU*, 663 F.2d at 246–47, it would be anomalous to conclude that 39 U.S.C. § 1208(b) implicitly grants an applicant for employment the right to sue for breach of contract.

*Baade v. United States Postal Service*, 664 F.Supp. at 631.

Similarly, *Campbell v. United States Postal Service*, 1990 WL 36132 (E.D.La. 1990), *aff'd without op.*, 925 F.2d 1459 (5th Cir.1991), involved a plaintiff who previously worked for the Postal Service, and applied for reinstatement thirteen years later in four Louisiana locations. His requests for reinstatement were denied in three locations, and from the fourth, he received a letter approving his request for reinstatement as positions became available. The offer was subsequently rescinded before he began working. He filed suit, alleging breach of contract, among other claims. The court dismissed the contract claim, citing the appointment provision at 39 U.S.C. § 1001(a), and the *McLean, Baade*, and *Boyd* cases discussed above. "Although arguably the Postal Service may not have made the wisest decision in sending Campbell a letter regarding reinstatement and later rescinding it, these acts do not give rise to a cause of action sounding in contract." *Id.*

In *Sims v. Local 308 Mailhandling, et al.*, 1994 WL 268252 (E.D.Pa.1994), *aff'd without op.*, 46 F.3d 1118 (3rd Cir.1994), the plaintiff was a mail handler for the Postal Service who was terminated four times over a period of years for poor attendance. Following the first three terminations, his union successfully negotiated his return. Following his fourth termination, his union did not file a grievance concerning his termination. His union representative told him, however, that if he kept in touch with the union and his postal supervisor and successfully kept a job for two years, he would be rehired as a postal employee. After two years, the union representative and a postal official signed a document stating plaintiff would be granted a casual appointment effective June 1, 1991; that upon satisfactory service he would be considered for an additional casual appointment effective September 1, 1991, and effective January 1, 1992, he would be considered for a career appointment, based on recommendations from his casual appointment.

In reliance on this document, plaintiff quit his job at another company on May 15, 1991. He was later informed in writing he would not be hired on June 1, 1991, and his appointment would be delayed, but he would be given the first casual appointment when hiring resumed. Plaintiff received a letter in June 1992 inquiring whether he was still interested in a casual position. He received pre-employment forms that he completed and returned to the Postal Service. He was never appointed to a casual or career position. He filed suit, alleging breach of contract, among other claims. The court granted summary judgment for defendant Postal Service on the breach of contract claim, finding that:

[t]he Postal Reorganization Act, 39 U.S.C. § 101 et seq., makes clear that "except as otherwise provided ... the Postal Service shall appoint all officers and employees of the Postal Service." 39 U.S.C. § 1001(a).... It permits the Postal Service to enter into employment contracts only for executive positions. 39 U.S.C. § 1001(c). Courts which have considered the question have consistently held that an applicant may not bring an action for breach of contract for fail-

ure of the USPS to appoint him or her to a promised position. *See, Reeder v. Frank,* 813 F.Supp. 773, 778–79 (D.Utah 1992), *aff'd on other grounds,* 986 F.2d 1428 (10th Cir.1993); *Baade v. U.S. Postal Service,* 664 F.Supp. 627, 629–30 (D.Me.1987); *Campbell v. United States Postal Service,* 1990 WL 36132 (E.D.La. 1990), *aff'd,* 925 F.2d 1459 (5th Cir.1991); *Boyd v. United States Postal Service,* 32 Fair Empl. Prac. Cas. (BNA) 1217 (W.D.Wash.1983), *aff'd on other grounds,* 752 F.2d 410 (9th Cir.1985); *McLean v. United States,* 538 F.2d 346, 1976 WL 23846 (Ct.Cl.1976) (unpublished disposition).

■ Another case supporting the position that federal employees who serve by appointment have no breach of contract claim when their appointments do not become effective is *Natl. Treasury Employees Union v. Reagan,* 663 F.2d 239 (D.C.Cir.1981) (hereinafter *"NTEU"*). *NTEU* was a class action case in which the plaintiffs were individuals who had received written notice between November 4, 1980 and January 20, 1981 that they had been unconditionally selected for federal jobs and were directed to report to work on a date certain, but had not yet begun work in those jobs by January 20, 1981. A hiring freeze was ordered by President Reagan on January 20, 1981. The plaintiffs were subsequently notified their appointments were revoked. Plaintiffs filed a class action lawsuit, contending, *inter alia,* they had been irrevocably appointed to the jobs in question. The district court concluded the plaintiffs had not been appointed to their positions, but had received revocable job offers. The appellate court found, however, that the plaintiffs had in fact been appointed to their positions, but with respect to the plaintiffs who had not begun working by January 20, 1981, the appointments were lawfully revocable, if revoked by the official having the authority to make the appointment.

For more than one hundred and seventy-five years, the rule as to when an appointment takes place has been clear: "when the last act to be done by the [appointing authority] was performed...." *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 152 L.Ed. 60 (1803).... It appears to us that the federal government played hide-and-seek with job-seekers, assuring them that jobs awaited them and only later— on occasion, after the prospective employee had acted on the assurance of a job—reversing itself.... The decision that the members of the class were appointees does not, we hasten to add, establish their right to relief. It remains to be decided whether those appointments were capable of being revoked and, if so, whether they were in fact revoked.... An appointee remains appointed, of course, until his appointment is properly revoked. The only one authorized to revoke an appointment is one authorized to make it.

*NTEU* at 242, 245–47 (citations omitted) (remanding to the district court for a determination as to whether all of the appointments made in these cases were properly revoked).

It would be illogical for this Court to permit the Plaintiffs in this case to maintain a cause of action for breach of contract when they had never received any notice of appointment to permanent positions from the Postal Service, whereas in *NTEU,* all of the plaintiffs had received written notice of unconditional selection for employment and a date certain on which to report for duty. The appellate court in *NTEU* held their appointments could lawfully be revoked by the appointing authority if done before they actually began working in their new jobs. The plaintiffs in *NTEU* were much farther down the road toward federal employment than the Plain-

tiffs in the instant action, having actually been appointed to their new federal jobs.

Plaintiffs' attempt to argue that, at the time the alleged promises of career employment were made to them, they were "employees" of the Postal Service, albeit temporary employees. They argue that their status as "employees," in contrast to being mere applicants for career employment or appointees, affords them rights under the Postal Reorganization Act (PRA) to pursue their breach of contract claims that mere applicants or appointees do not have, where career positions with the Postal Service have been promised but do not materialize.

■ Defendants acknowledge that on or about January 7, 2001, Plaintiffs were "casual employees" of the Postal Service, serving limited term appointments that were subject to "at will" termination. With respect to appointments to career positions, however, defendants assert the Plaintiffs were applicants, just like applicants not working for the Postal Service. Plaintiffs could only have become career Postal Service employees by being offered, and accepting, career appointments—separate from their appointments to casual positions. The Court finds that an appointment to a Postal Service position may be revoked at any time up to the point at which an individual actually begins the duties of the position. Thus, the Plaintiffs' career appointments, separate from their casual appointments, were revocable up to the time they actually began working the duties of career positions.

Plaintiffs' also allege they have the right as employees to bring a breach of contract claim under 39 U.S.C. §§ 409, 1208(b), and 1209(c), collectively—a right that appli-

cants and appointees do not have. The Plaintiffs focus their reliance on 39 U.S.C. § 1208(b), which states that "[s]uits for violations of contracts between the Postal Service and a labor organization representing Postal Service employees, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy."

It is well established that 39 U.S.C. § 1208(b) is the "analogue" of § 301(a) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a).[2] Section 301(a) law is consistently applied to cases brought under 39 U.S.C. § 1208(b). *Bowen v. United States Postal Service*, 459 U.S. 212, 232 n. 2, 103 S.Ct. 588, 74 L.Ed.2d 402 (1983) (White, J., concurring in part and dissenting in part); *Miller v. United States Postal Service*, 985 F.2d 9, 10 n. 1 (1st Cir.1993); *Bacashihua v. Am. Postal Workers Union and United States Postal Service*, 859 F.2d 402, 405 (6th Cir. 1988); and *Am. Postal Workers Union v. United States Postal Service*, 823 F.2d 466, 469 (11th Cir.1987). The Eleventh Circuit noted in *Am. Postal Workers Union v. United States Postal Service*, 823 F.2d at 469, that "Congress intended section 1208(b) of the Postal Reorganization Act to have the same effect within its sphere" as Section 301(a) does elsewhere in labor law.

■ Plaintiffs further argue that under Section 1208(b) and Section 301(a), individual employees may bring suit for breach of contract. While this is true in some limited circumstances, it is not true in the instant case. The express language of both Section 1208(b) and Section 301(a)

---

**2.** 29 U.S.C. § 185(a) states that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

provides that suit may be brought for "violations of contracts between an employer and a labor organization ... or between labor organizations." The Supreme Court has interpreted the language of Section 301(a) in *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 657, n. 13, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), finding that the word " 'between' in the statute refers to ·'contracts' not 'suits.' "

Therefore, the contract at issue in a lawsuit must be either between the employer and a labor organization, or a contract between labor organizations. In this case, the contract at issue is an alleged oral contract between Plaintiffs and two Postal Service managers at the Miami PMPC. Such a contract does not fall within the ambit of Section 1208(b) or Section 301(a).[3]

The Third Circuit Court of Appeals addressed this issue in *Adams v. Budd Co.,* 349 F.2d 368 (3rd Cir.1965). In *Budd,* the plaintiffs sued their employer and union for allegedly conspiring to deprive them of "super-seniority" status that they had acquired under their original contracts of hire and earlier labor contracts. The super-seniority status, which they had previously enjoyed, was bargained away in later collective bargaining agreements. The Third Circuit affirmed dismissal of the action under Section 301(a), stating:

The distilled essence of the plaintiffs' position is that they can enforce, under Section 301(a), their "contract of hire" super-seniority rights, accorded under Budd's pre-labor contract policy, even though subsequently negotiated collective bargaining agreements bargained away such rights.

The plaintiffs seem to be oblivious of the fact that Section 301(a) only creates federal jurisdiction, in the absence of diversity citizenship, with respect to *"suits for violation of contracts* between an employer and a labor organization ... or between such labor organizations."

In *Leskiw v. Local 1470, Int'l Bhd. of Elec. Workers, AFL–CIO–CLC,* 464 F.2d 721 (3rd Cir.1972), *cert. denied,* 409 U.S. 1041, 93 S.Ct. 526, 34 L.Ed.2d 490 (1972), the Third Circuit reiterated its holding that suit under Section 301(a) must be on the collective bargaining agreement. Various federal district courts have also held that actions under Section 301(a) must be on contracts between the employer and a labor organization, or between labor organization, as the statute expressly provides. These holdings apply as well to actions brought under 39 U.S.C. § 1208(b).

In *Weiss v. Legal Aid Society,* 449 F.Supp. 571 (S.D.N.Y.1978), the plaintiff was a former lawyer at the Legal Aid Society. When he was hired in 1974, the

---

**3.** The majority of actions brought under Section 1208(b) and Section 301(a) involve collective bargaining agreements (CBAs). For an *individual* employee *to prove* breach of a collective bargaining agreement, the· employee must prove not only that the employer breached the CBA, but that the union breached its duty of fair representation. *See, e.g.,* . *DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 164–65, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Although CBAs are the predominant contracts on which actions are brought under Section 301(a) and Section 1208(b), other contracts between employers and labor organizations are cognizable under these provi-

sions, such as a strike settlement agreement between an employer and local unions. *See, e.g., Retail Clerks v. Lion Dry Goods, Inc.,* 369 U.S. 17, 82 S.Ct. 541, 7 L.Ed.2d 503 (1962). Contracts between labor organizations are also expressly cognizable under Section 301(a) and Section 1208(b). Examples of such contracts are a no-raid agreement, *Int'l Bhd. of Firemen and Oilers v. Int'l Ass'n of Machinists,* 338 F.2d 176 (5th Cir.1964), and the constitution of a union, *Parks v. Int'l Bhd. of Elec. Workers,* 314 F.2d 886 (4th Cir.), cert. denied, 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963).

attorneys were members of a collective bargaining unit. The collective bargaining agreement (CBA) in effect at the time provided that attorneys would receive wage step increases for every year of service. The CBA expired two months before plaintiff completed his first year of service, and he did not receive a wage increase. He brought suit under Section 301(a), alleging his employer, the Legal Aid Society, had orally promised him he would receive the wage increase retroactively. The district court held:

> It is now clear beyond doubt that plaintiff's alleged cause of action is based solely on an oral promise allegedly made by the Society ... Under these circumstances this Court is duty bound to dismiss the complaint for lack of subject matter jurisdiction.... The language of this section [29 U.S.C. § 185(a)] is clear: it confers jurisdiction on this Court only when the complaint alleges a violation of an agreement between an employer and a labor organization. This Court is without jurisdiction when the plaintiff is an individual employee suing upon an individual contract with his employer.

*Weiss v. Legal Aid Society,* 449 F.Supp. at 573.

In *Pajares v. United Steelworkers Local 5769,* 432 F.Supp. 418, 421–22 (E.D.La. 1977), the plaintiff was a former union official who had been granted "super-seniority" pursuant to an agreement between the Local union and employer that was supplemental to the CBA. The supplemental agreement permitted the extension of super-seniority status to a total of no more than 10 Local officers and grievance committeemen, and gave the Local the right to designate which officers would be allowed super-seniority. The Local union membership later voted to reduce the number of union officials designated for super-seniority status. Plaintiff subsequently lost his super-seniority status and was laid off. He brought suit in state court, arguing he had a separate agreement with the Local that he would retain his super-seniority status. The Local and employer removed the case to federal court, arguing the case arose under Section 301(a) of the LMRA. The district court held it lacked jurisdiction under Section 301(a):

> The Labor–Management Relations Act of 1947 provides for suits in the district courts for violation of collective-bargaining contracts between labor organizations (such as the defendant Local) and employers (such as the defendant Company). *See 29 U.S.C. § 185(a).* Moreover, it is settled jurisprudence that this provision of the Act contemplates not only suits between unions and employers, but also suits by individual employees to vindicate "uniquely personal" rights such as wages, wrongful discharge, etc. *See Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976). At the same time, however, the individual employee's right to bring such actions in federal court is not unlimited; rather, whatever personal rights the plaintiff asserts—here, as to seniority—"must find their source in the collective bargaining agreement" between the company and union. (citation omitted).

> In this case, it becomes clear from a reading of the plaintiff's state court petition that his action is based upon an alleged contractual agreement existing between the Local and him, and *not* upon the collective bargaining agreement or supplemental agreement which existed between the Local and the Company.... No federal jurisdiction under the Labor–Management Relations Act can arise where the plaintiff employee does not even allege or contend that there has been a violation of the collective bargaining agreement.

*Accord, Local 67, Int'l Union of United Brewery, Flour, Cereal, Soft Drink and Distillery Workers v. Duquesne Brewing Co.,* 354 F.Supp. 1033 (W.D.Pa.1973) ("[In actions brought under Section 301(a) ] this does not mean, of course, that individual employees may not sue as in *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), but the suit must be on the agreement between the [employer] and the labor organization."); *Baker v. Am. Motors Corp., et al.,* 1980 WL 2135 (E.D.Wis.1980) ("Jurisdiction under Section 301 can only be maintained if the complaint alleges a violation of the collective bargaining agreement between the employer and the Union."). *See,* also, *United States Postal Serv. v. Nat'l Rural Letter Carriers Ass'n, and Nat'l Ass'n. of Letter Carriers, AFL–CIO,* 959 F.2d 283, 286 (D.C.Cir.1992) ("Section 1208(b) of the Postal Reorganization Act, 39 U.S.C. § 1208(b), gives federal district courts jurisdiction over suits for violations of contracts between the United States Postal Service and unions representing postal employees.").

Plaintiffs rely on *Miles v. United States Postal Service,* 561 F.2d 1348 (9th Cir. 1977) for authority to bring their breach of contract claims under 39 U.S.C. § 1208(b) for failure to be appointed to career positions. In *Miles,* plaintiff was hired as a mail handler and was allegedly verbally promised before he was hired he would work full-time. After he began the job, he was only allowed to work part-time. He subsequently resigned. The Ninth Circuit found that, as a non-union employee, plaintiff had the right to file suit individually under Section 1208(b) on the alleged oral agreement between the postmaster and himself that plaintiff would work full-time.

Defendants contend, and this Court agrees that *Miles* was wrongly decided. The decision is contrary to the express language of Section 1208(b) that suit may only be brought for "violations of contracts between the Postal Service and a labor organization representing Postal Service employees, or between any such labor organizations." The *Miles* decision also ignored the Supreme Court's interpretation in *Republic Steel* of almost identical language in Section 301(a) of the LMRA, that the word "between" refers to "contracts" and not "suits."

In *Miles,* the Ninth Circuit referenced Section 301(a) and cited *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976) for the proposition that individual employees may file suit under Section 301(a). In *Hines,* however, the contract on which suit was brought was a collective bargaining agreement, as mandated by the language of Section 301(a).[4] *Hines* provides no support for the *Miles* conclusion that individual postal employees may bring an action under Section 1208(b) on a contract that is neither between the employer and a labor organization representing postal employees, nor between labor organizations.

Not only is *Miles* not controlling in this circuit, it will not be given persuasive effect by this Court because its holding runs contrary to the express language of the statute. In reviewing the cases citing *Miles,* the Court has not found one case with a similar holding, that is, that an

---

4. In *Hines,* the Supreme Court stated: "Section 301 of the Labor Management Relations Act ... provides for suits in the district courts for violation of collective bargaining contracts between labor organizations and employers without regard to the amount in controversy.... The strong policy favoring judicial enforcement of collective-bargaining contracts was sufficiently powerful to sustain the jurisdiction of the district courts over enforcement suits even though the conduct involved was arguably or would amount to an unfair labor practice within the jurisdiction of the National Labor Relations Board." (footnote omitted).

individual employee may bring an action under Section 301(a) or Section 1208(b) on a contract between the employee and the employer, as opposed to a contract between the employer and a labor organization, or a contract between labor organizations. Plaintiffs also cite *Lofton v. United States Postal Service*, 592 F.Supp. 36 (S.D.N.Y.1984) for the proposition that individual employees may bring a breach of contract action under Section 1208(b). In *Lofton*, however, the plaintiff sought to vacate an adverse arbitration award that was the culmination of grievance procedures established in the collective bargaining agreement. Again, the contract at issue was one between the employer and a labor organization. *Lofton* does not provides support to the Plaintiffs in their attempt to file suit under Section 1208(b) on alleged oral agreements between themselves and two postal managers.

Further, *Miles* is distinguishable from the instant case because it did not involve the issue of denial of an "appointment" to a Postal Service position. As explained above, appointments to postal positions, like other federal appointments, have been held by the courts to be revocable and do not give rise to an action for breach of contract. Given the Ninth Circuit's affirmance of *Boyd v. United States Postal Service.*, 32 Fair Empl. Prac. Cas. (BNA) 1217 (W.D.Wash.1983) at 752 F.2d 410 (1985), it is unlikely the Ninth Circuit would hold that postal employees have a private cause of action in contract when denied a postal appointment.

■ Plaintiffs also rely on 39 U.S.C. § 1209(c) as jurisdictional support for their breach of contract claims. This reliance is misplaced. 39 U.S.C. § 1209(c) states:

Each employee of the Postal Service shall have the right, freely and without fear of penalty or reprisal, to form, join, and assist a labor organization or to refrain from any such activity, and each employee shall be protected in the exercise of that right.

*Id.*

The plain language of this section provides that Postal Service employees have the protected right to form and join a labor union, and the protected right to refrain from forming and/or joining a labor union. Plaintiffs, relying on *Miles*, ask this Court to interpret 39 U.S.C. § 1209(c) as granting all postal employees the same rights regardless of union membership. Plaintiffs argue that because union members have a right to bring breach of contract claims under Section 1208(b) non-union members such as themselves also have that right.

The Court finds Plaintiffs' interpretation of § 1209(c) as granting all postal employees the same rights regardless of union membership is incorrect. § 1209(c) protects the choice to participate or not participate in union membership and activities, "freely and without fear of penalty or reprisal." Postal employees have the right to collectively organize, and union membership is optional, not required.

Section 1209(c) does not confer additional rights on non-union members, beyond those enjoyed by union members. As discussed above, the courts have held that under Section 301(a) of the LMRA, employees who are union members are limited to bringing breach of contract claims on contracts between the employer and labor organizations, or between labor organizations—but not on contracts between the individual employee and the employer. Thus, 39 U.S.C. §§ 1209(c) and 1208(b) do not confer on non-union members the right to bring breach of contract claims based on contracts between individual employees and the employer. Plaintiffs cannot bring their breach of contract claims under 39 U.S.C. §§ 409, 1208(b) and 1209(c).

■ Plaintiffs also argue that the general waiver of sovereign immunity in the Postal Service's "sue and be sued" clause [39 U.S.C. § 401(1)][5] allows them, as postal employees, to bring their breach of contract claims, separate and apart from their statutory right to do so under 39 U.S.C. §§ 1208(b) and 1209(c), citing *Federal Housing Admin. v. Burr*, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940), *Franchise Tax Bd. of California v. United States Postal Service*, 467 U.S. 512, 104 S.Ct. 2549, 81 L.Ed.2d 446 (1984), and *Loeffler v. Frank*, 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988) in support. Plaintiffs contend the Postal Service's waiver of sovereign immunity is to be liberally construed, and allows Plaintiffs, as postal employees, to bring almost any lawsuit against the Postal Service, other than those specifically limited by 39 U.S.C. § 409, such as tort claims (which must be brought under the FTCA).

The Postal Service's waiver of sovereign immunity is not as broad as Plaintiffs assert, and does not extend to their breach of contract claims. In *Burr*, although the Supreme Court held that "waivers by Congress of governmental immunity in case of [ ] federal instrumentalities should be liberally construed," it found three exceptions to a broad waiver, one of which is applicable here.

"If the general authority to 'sue and be sued' is to be delimited by implied exceptions, it must be clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the 'sue and be sued' clause in a narrow sense."

*Burr*, 309 U.S. at 245, 60 S.Ct. 488.

A breach of contract claim arising from denial of a promised appointment to a postal position is inconsistent with the statutory scheme of the PRA expressly establishing that most postal employees serve by appointment, and not by employment contract.[6] In passing the PRA, if Congress had wanted to provide that most, or all, postal employees serve by employment contract, and not by appointment, it could have done so in the statute. Congress did not do that. Instead, Congress established the new Postal Service, via the PRA, with most employees serving by appointment—just like employees do in other federal agencies and instrumentalities. Appointments to federal positions, including Postal Service positions, are revocable up to the point an individual begins working in the position, with no resulting cause of action in contract when an appointment is denied.

Since passage of the PRA, Congress has not amended the statute to provide that postal employees serve by employment contract, or to otherwise provide applicants and/or employees a cause of action when an appointment is denied, despite the cases cited above holding that there is no such cause of action. If this was the intent of Congress, Congress could have said so in an statutory amendment.

---

**5.** 39 U.S.C. § 401(1) states: "The Postal Service shall have the following general powers: (1) *to sue and be sued in its official name* . . . ."

**6.** 39 U.S.C. § 1001 states, in pertinent part:

(a) Except as otherwise provided in this title, the Postal Service shall appoint all officers and employees of the Postal Service. . . .
(c) The Postal Service may hire individuals as executives under employment contracts for periods not in excess of 5 years. Notwithstanding any such contract, the Postal Service may at its discretion and at any time remove any such individual without prejudice to his contract rights.

Under the Plaintiffs' "waiver of sovereign immunity" argument, their status as postal employees is irrelevant. They argue that a general waiver of sovereign immunity at 39 U.S.C. § 401(1) is not limited to employees and it is not limited to any specific group of individuals. Thus, under Plaintiffs' sovereign immunity argument, applicants and appointees, as well as employees, should be able to bring a cause of action for breach of contract when a promised postal appointment is denied. But Plaintiffs have not cited this Court to one case holding that a postal employee, applicant, or appointee has a cause of action in contract when a postal appointment is denied. The various cases cited above all come to the opposite conclusion—postal employees serve by appointment, the denial of which does not give rise to a breach of contract claim.

Even a Postal Service employee cannot sue the Postal Service for breach of contract. *See, e.g., Reeder v. Frank,* 813 F.Supp. 773 (D.Utah 1992), *aff'd,* 986 F.2d 1428 (10th Cir.) (unpublished table decision), *cert. denied,* 510 U.S. 813, 114 S.Ct. 61, 126 L.Ed.2d 30 (1993). In *Reeder,* the plaintiff was a postal employee who sued the Postal Service, claiming, *inter alia,* the Postal Service had violated 39 U.S.C. §§ 1001(b) and 1003(b) by not promoting him.[7] He claimed to have private causes of actions under these two provisions. He also argued he had causes of action for breach of employment contract and breach of an implied covenant of good faith and fair dealing, which he was entitled to bring pursuant to the Postal Service's waiver of sovereign immunity, citing *Loeffler v. Frank.* The district court dismissed these claims and was affirmed by the Tenth Circuit. The district court found that no other court had construed §§ 1001 and 1003 as implying a private cause of action. Nothing in the language of the statute or its legislative history showed Congress intended to create a private remedy. *Reeder,* 813 F.Supp. at 777–78. With respect to the contract claims, the court stated:

[T]he Postal Reorganization Act expressly provides that postal employees serve pursuant to an appointment.... Reeder argues that employment contracts for federal employees should be recognized because the United States Supreme Court, in *Loeffler v. Frank* ... stated that by including a "sue and be sued" clause in the Postal Service's charter, Congress intended to give the Postal Service the "status of a private commercial enterprise." Such a result does not necessarily follow from the Supreme Court's reasoning in *Loeffler,* and cannot be inferred from Congress' actions. Although this Court recognizes that Congress did envision a broader role for the Postal Service when it enacted the Postal Reorganization Act, Reeder has provided no evidence that Congress intended to change the underlying relationship between the Postal Service and its employees. Rather, the language in section 1001(a) of the Postal Reorganization Act reinforces the opposite interpretation.... In short, federal employees, and particularly postal service employees, serve pursuant to appointments and not employment contracts.

*Id.* at 779.

In *Am. Postal Workers Union v. United States Postal Service,* 940 F.2d 704, 706–07

---

7. Section 1001(b) states, in relevant part: "The Postal Service shall establish procedures, in accordance with this title, to assure its officers and employees meaningful opportunities for promotion and career development ...." Section 1003(b) states, in relevant part: "The Postal Service shall follow an employment policy designed ... to extend opportunity to the disadvantaged and the handicapped."

(D.C.Cir.1991), the plaintiffs were four former probationary postal employees. They each sustained work-related injuries during their 90–day probationary period. After filing their compensation claims for work-related injuries they were terminated during the probationary period. Three of the four plaintiffs filed grievances, in which they sought arbitration of their removals. The arbitrator ruled the grievances were not arbitrable, because the applicable collective bargaining agreement expressly provided the Postal Service could terminate probationary employees at any time during the probationary period, and probationary employees "shall not be permitted access to the grievance procedure" in relation to their removals. The plaintiffs filed suit, bringing, *inter alia,* breach of contract claims. The Court of Appeals affirmed summary judgment for the Postal Service on all of the plaintiffs' claims, finding the plaintiffs could not bring breach of contract claims, although they as a group (like the Plaintiffs in the instant case) fell outside the protection of the collective bargaining agreement.

Under the Plaintiffs' overly expansive interpretation of the "sue and be sued" clause in 39 U.S.C. § 401, claims such as Mr. Reeder's and the plaintiffs' in *Am. Postal Workers Union* would be allowed, because according to Plaintiffs, postal employees can maintain almost any lawsuit against the Postal Service, other than those specifically limited by 39 U.S.C. § 409. Federal courts have declined to allow postal employees to bring an array of causes of action arising out of the employee-employer relationship, such as *Bivens*[8] constitutional claims, and actions under Sections 1001(b) and 1006 of the PRA. In *Pipkin v. United States Postal Service,* 951 F.2d 272, 275 (10th Cir.1991), the

Tenth Circuit affirmed dismissal of the plaintiff's *Bivens* constitutional claim arising from his allegation that certain postal employees had devised and implemented a plan to drive the plaintiff from his postal job. The Court stated:

> When Congress has acted to create a comprehensive statutory scheme to address a particular class of claims, the courts will not act to create additional judicial remedies ... even where a particular litigant does not have a remedy available under the statutory scheme.... This is particularly true in federal employment relationships, where Congress has provided a comprehensive civil service scheme to address disputes.

*Id.*

The PRA is such a comprehensive statutory scheme. This Court will refrain from creating additional judicial remedies not provided for in the statute. *See also, Glenn v. United States Postal Service,* 939 F.2d 1516, 1520 (11th Cir.1991) (no express or implied cause of action for postal employees under 39 U.S.C. § 1006); *Blaze v. Payne,* 819 F.2d 128 (5th Cir.1987) (no employee cause of action under 39 U.S.C. § 1001 because of the comprehensive labor law scheme and the right to collective bargaining embodied in the PRA); *Gaj v. United States Postal Service,* 800 F.2d 64 (3rd Cir.1986) (no implied cause of action under 39 U.S.C. § 1001 because the intent of Congress in passing the PRA, as shown by language and legislative history, was not to create a private remedy). Accordingly, it is

**ORDERED AND ADJUDGED** that Plaintiff's First Amended Complaint must be **DISMISSED** with prejudice pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. The Clerk of the Court is directed to mark

---

**8.** *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

this case as **CLOSED**. All pending motions not otherwise ruled upon are **DENIED** as moot.